CASE 20—ACTION BY THE LOUISVILLE & N. R. Co. AGAINST THE LOUISVILLE BRIDGE Co. AND THE PITTSBURG, C. C. & ST. L. RY. Co., FOR BREACH OF CONTRACT.—JUNE 20.

# Louisville Bridge Co. v. L. & N. R. R. Co. Pittsburg, C., C. & St. L. R. R. Co. v. Same.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

FROM THE JUDGMENT RENDERED DEFENDANTS SEPARATELY APPEAL, AND PLAINTIFF PROSECUTES A CROSS APPEAL. AFFIRMED.

INDIVISIBLE CONTRACT—SPLITTING OF CAUSE OF ACTION—OBJECTION—WAIVER—EVIDENCE—TABLES—SECONDARY EVIDENCE.

Held: 1. Two suits on the same contract were begun at nearly the same time in the same court, in both of which defendant appeared and filed demurrers, which were heard together; only one opinion being rendered in both cases. Defendant answered, and both causes proceeded for several years; defendant at no time making objection to the splitting of the cause of action. After a judgment in one suit, and some five years after the suits were begun, defendant pleaded that judgment in bar in the other suit; claiming that the cause of action had been split. HELD, that defendant had waived its right to object to the splitting of the cause of action.

2. In a suit by a railway company to recover excessive tolls charged by defendant bridge company, the railway company had no means of knowing the amount of freight that had passed over the bridge, except by the waybills and transfer slips which it had preserved, and these were very numerous. HELD, that a tabulated statement of the facts shown by the bills and slips was admissible in evidence on being sworn to as correct by the

Vol. 116] APRIL TERM, 1903. 259

Lou. Bridge v. L. & N. R. R. Co. P., C. C. & St. L. R. R. Co. v. Same.

officer of the railway company under whose supervision the statement was prepared, and after an offer to allow the opposing party to examine the original papers.

3. The waybills and transfer slips were not objectionable as secondary evidence.

4. A plaintiff in an action on contract can not recover where there is no data from which the amount to which he is entitled can be ascertained, though it is clear that he is entitled to recover something. •

GIBSON, MARSHALL & GIBSON, HUMPHREY, BURNETT & HUMPHREY, FOR APPELLANTS.

### STATEMENT.

On November 22, 1892, the appellee, the Louisville & Nashville Railroad Company, brought a suit in what was then the Louisville Law and Equity Court, the case being numbered on the docket 5205. The appellants, the Louisville Bridge Company, and the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and certain other railroad companies were made parties defendant. The Louisville & Nashville Railroad Company sought to recover against the Louisville Bridge Company and the other defendants a certain amount of money alleged to have been wrongfully collected from it and retained by the Louisville Bridge Company or wrongfully paid over to the other defendants. The suit involved a written contract dated June 5, 1872, and the sums sought to be recovered were those so wrongfully rebated or wrongfully paid over since January 1, 1892.

A judgment in the sum of $192,478.44, including interest, was entered in favor of the Louisville & Nashville Railroad Company against the Louisville Bridge Company by the lower court June 27, 1896. It included the tolls found to have been illegally exacted from the Louisville & Nashville Railroad Company for the four years—1892, 1893, 1894 and 1895. This judgment was affirmed by this court on May 24, 1899. The Opinion of the court is reported under the style of Louisville Bridge Company v. Louisville & Nashville Railroad Company, 21 Ky. Law Rep., 272. This opinion states the history of that cause and of the contentions of the parties therein.

On December 28, 1892, a little more than a month after the above suit was filed, the Louisville & Nashville Railroad Company filed another suit in the Louisville Law and Equity Court, numbered upon its docket 5249. This suit was upon exactly the same contentions as were made in the case decided by this court, and the claim was for tolls alleged to have been illegally ex-

260      KENTUCKY REPORTS.    [Vol. 116

Lou. Bridge v. L. & N. R. R. Co. · P., C. C. & St. L. R. R. Co. v. Same.

acted during the eleven years ending December 31, 1891. (R. vol. 1, pp. 1 to 10.)

It will thus be seen that the Louisville & Nashville Railroad Company, having claims against the Louisville Bridge Company and certain railroad companies for tolls exacted contrary to the provisions of a written contract dated June 5, 1872, brought two suits. In one of them the tolls were alleged to have been illegally exacted during the four years after January 1, 1892, and in the other the tolls were alleged to have been illegally exacted during eleven years prior to January 1, 1892.

In the first of these suits, as stated above, the Louisville & Nashville Railroad Company recovered a judgment against the Louisville Bridge Company, and this judgment was subsequently affirmed by this court.

In the second suit, which is now before the court on this appeal, the Louisville & Nashville Railroad Company secured a judgment for $259,280.61 against the Louisville Bridge Company and for $140,311.10 against the other appellant.

We are seeking a reversal of these judgments on various grounds.

## POINTS AND CITATION OF AUTHORITIES.

1. Where two suits are brought involving breaches of the same contract, all of which breaches had been suffered prior to the bringing of either suit, the defendant in the second suit may plead the pendency of the first in abatement, or may plead to the merits in both, and, one of the causes being determined, may plead the judgment in that cause as in bar of a further prosecution of the other cause.

2. A right of action can not be split into two suits. Freeman on Judgments, sec. 240; Black on Judgments, secs. 734, 735, 747; 1 Ency. Plead. and Prac., 148, 153, 154, 155; Bliss on Code Pleading, sec. 118; Powell v. Weiler, 11 B. Mon., 186; Winestock v. Bellwood, 12 Bush, 139; Pilcher v. Ligon, 91 Ky., 228; Bendernagle v. Cocks, 19 Wend., 207; S. C., 32 Am. Dec., 448; Secor v. Sturgis, 16 N. Y., 553; Camp v. Morgan, 21 Ill., 255; Casselberry v. Forquer, 27 Ill., 170; Rosenmueller v. Lampke, 89 Ill., 212; S. C., 31 Am. Rep., 75; Richardson v. Eagle Machine Works, 78 Ind., 422; S. C., 41 Am. Rep., 584; Whittaker v. Hawley, 30 Kansas, 317; S. C., 1 P. R., 508.

3. Failing to plead in abatement does not prevent plea in bar. Black on Judgments, sec. 734; Secor v. Sturgis, 16 N. Y., 554; Warren v. Cummings, 16 Cush., 104; Hughes v. Dundee Mortgage Co., 26 Fed. Rep., 832; Baird v. United States, 96

Vol. 116]       APRIL TERM, 1903.                261

Lou. Bridge v. L. & N. R. R. Co.   P., C. C. & St. L. R. R. Co. v. Same.

U. S., 430; Farrington v. Payne, 15 Johnson, 432; Lucas v. Lacompte, 42 Ill., 303; Oliver v. Holt, 11 Ala., 574; S. C., 46 Am. Dec., 228; Wichita R. R. v. Beebe, 39 Kansas, 465; S. C., 18 P. R., 502; Bolling Coal Co. v. Whittaker Brick Co., 52 Kansas, 747; S. C., 35 P. R., 810.

4. Judgment should be reversed on the merits. Louisville Bridge Co. v. Louisville & Nashville R. R. Co., 21 Ky. Law Rep., 271.

5. Exceptions to depositions of witnesses on ground of incompetency. Price v. Earl of Torrington, 1 S. L. C., 7 Am. Ed., 542; star page 397; also at page 552, star page 407; 1 Wharton on Evidence, secs. 238 239, 240, 241, 661, 662; 2 Jones on Evidence, secs. 323, 325; Poor v. Robinson, 13 Bush, 294; Chaffee v. United States, 18 Wall., 517; Merrill v. Ithaca R. R., 16 Wend., 586.

6. Reconsigned traffic.

7. Tolls on reconsigned traffic in judgment against second appellant.

8. Interest.   Moore v. Pendergrast, 6 J. J. M., 535; Adams Express Co. v. Milton, 11 Bush, 50; Neal v. Keel's Executors, 4 Monr., 163; Henderson Cotton Co. v. Lowell Shops, 86 Ky., 668.

DODD & DODD, ATTORNEYS FOR LOUISVILLE BRIDGE CO.

### POINTS.

In addition to the two propositions, discussed by our colleagues, we respectfully submit that, on the basis of the admissions made in the pleadings, when read in connection with the agreed facts and all of the evidence, the following meritorious propositions clearly apply to this case and show the judgment to be erroneous, to-wit:

1. That on the admissions made in the pleadings and stipulated in the agreed facts the appellee's petition should have been dismissed.

2. That the laches and acquiescence of the appellee for more than fifteen years in the practical and contemporaneous construction given by the parties to the said contract, and its own acknowledged violations of the terms thereof during the period covered by this suit, should bar and estop it from asserting its present demands against the bridge company.

3. That the five-year limitation statute logically applies to a part, if not to all, of the appellee's claim, because its re-formed petition, styled by it to be "in lieu of the (original) petition heretofore filed and the amendments thereto," was not filed until February 11, 1895, and its alleged *new cause of action,*

. 262          KENTUCKY REPORTS. .          [Vol. 116

Lou. Bridge v. L. & N. R. R. Co.   P., C. C. & St. L. R. R. Co. v. Same.

therein attempted to be stated, was not completed by amendment until March 20, 1897 (Rec. 49 and 122), and was then allowed to remain dormant, without preparation or prosecution, from 1897 until 1901 (Rec. 175).

4. That the Louisville Bridge Company never received nor had the use and benefit of any part of the principal sum of $150,775.58 and $108,504.73 interest *with which it is primarily charged in solido* in the judgment complained of, nor ever at any time had in its treasury or under its control any sum in excess of the fixed charges enumerated in the contract, and that, if required to pay this judgment, it would have to do so out of its *corpus*, and this, too, at a time when the appellee, Louisville & Nashville Railroad Co., and appellant, Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co. are still in the possession of its properties under the contract of 1872, all of which is contrary to the plain meaning of the said contract.

5. That the tolls charged by appellee on reconsigned freight traffic, which said reconsignments did not pass over nor pay any tolls to the bridge company, aggregate, during the four years prior to January 1, 1892, the following principal sums, to-wit:

| | |
|---|---|
| 1888  .....:....................$23,860.59 |
| 1889  ........................... 41,377.41 |
| 1890  ............................ 27,771.24 |
| 1891  ............................ 29,203.51 |

$122,212.75 (Rec. 343).

If this reconsigned traffic, which never passed over the bridge, nor paid any tolls thereon, be eliminated it would reduce the principal sum of $150,775.88 by the sum of at least $35,653.40, exclusive of interest to the date of the judgment (Rec. 350).

We insist that, after the payment of the tolls on the original consignments which passed over the bridge, these reconsignments, over a different line of road than the original consignments and not passing over the bridge, should not be charged against the bridge company even if they had been properly reported, which was not the case.

6. That of the $150,775.88, principal of the judgment rendered, the four northern co-tenants of the appellee as its connecting carriers were suffered and permitted by the appellee to collect, report, and retain *as parts of their own traffic*, and without the knowledge or consent of the bridge company of appellee's claim to any interest therein, the following respective sums:

Pittsburg, Cincinnati, Chicago & St. Louis Ry. Co...$81,785.94
Louisville, New Albany & Chicago R. R. Co........ 27,085.25

Vol. 116]    APRIL TERM, 1903.    263

Lou. Bridge v. L. & N. R. R. Co.  P., C. C. & St. L. R. R. Co. v. Same.

Louisville, Evansville & St. Louis R. R. Co., ......37,485.38
Ohio & Mississippi R. R. Co. ...................... 3,539.08
"Route not given" ...........................:........ 880.23

Aggregating the principal sum of .,............$150,775.88
(Rec. 362).

No part of the above sums were ever *paid* over to or *received* by the Louisville Bridge Company.

In the face of these admitted facts the judgment, as drafted and entered by the lower court herein, recited that these several sums were "*primarily due and payable to said plaintiff by the defendant, Louisville Bridge Company,*" and refused to subrogate the Louisville Bridge Company, upon the payment thereof, to any of the rights of the appellee against any of the other tenants, or to make them contribute any part thereof.

7. That the judgment, in action No. 5205, rendered June 27, 1896, is not a precedent or an adjudication against the appellant Bridge Company in this case. The patent evidential differences between the facts in the two cases are briefly pointed out.

8. That in no event should interest, prior to the rendition of the judgment, March 11, 1902, aggregating the large sum of $108,504.73, have been allowed under the facts in this case.


AUTHORITIES CITED.


On Practical Construction and Laches. Louisville Turnpike Co. v. Shadburn, 1 Ky. Law Rep., 325; Chicago v. Sheldon, 9 Wall., 54; Topliff v. Topliff, 122 U. S., 510; Attorney General v. Drummond, 1 Dru. & Wal., 366 (2 H. L. Cas., 837); Chicago Ry. Co. v. Northern Pac. Ry. Co., 101 Fed. Rep., 795 (42 C. C. A., 28); Newton v. Wooley, 105 Fed. Rep., 546; Accumulator Co. v. Dubuque Ry. Co., 64 Fed. Rep., 74 (12 C. C. A., 40); Lumber Co. v. Stump, 86 Fed. Rep., 578 (18 C. C. A., 569); Publishing Co. v. Swift, 97 Fed. Rep., 296 (38 C. C. A., 192); Hammond v. Hopkins, 143 U. S., 250; Johnson v. Mining Co., 148 U. S., 370; Martin v. Letty, 18 B. Mon., 582; Harwood v. Railroad Co., 17 Wall., 87.

On Limitation: Hyatt v. Bank of Ky., 8 Bush, 200; Ky. Cent. R. R. Co. v. Campbell, 7 Ky. Law Rep., 525; Leatherman v. Times Co., 88 Ky., 291; Tate v. Hawkins, 1 Pet., 360.

On Landlord and Tenant; Trabue v. Ramage, 80 Ky., 323.

On suretyship and Subrogation:   Secs. 486, 4665 and 4666 Ky. Stats.; Veach v. Wickersham, 11 Bush, 261; Elbert v. Jacoby, 8 Bush, 545; Evans v. Rhea, 12 Ky. Law Rep., 224;

264       KENTUCKY REPORTS.      [Vol. 116

Lou. Bridge v. L. & N. R. R. Co.   P., C. C. & St. L. R. R. Co. v. Same.

Bickel v. Judah, 3 Ky. Law Rep., 728; Curry v. Curry, 87 Ky., 671; Warfield v. Brand, 13 Bush, 93; Givens v. Flannery, 105 Ky., 451.

On Differentiation and Interest: Louisville Bridge Co. v. L. & N. R. R. Co., 21 Ky. Law Rep., 271-278; Louisville Gas Co. v. Hargis & Eastin, 17 Ky. Law Rep., 1190.

HELM, BRUCE & HELM, FOR APPELLEE.

## POINTS AND AUTHORITIES.

1. Where two actions are brought upon a continuing account, with separate items of the account involved in each action, an objection to maintaining the two suits must be made by demurrer if the fact appears upon the face of the adversary's pleading, and if not by plea in abatement, and the failure to thus object is a waiver of all objections to the prosecution to a final conclusion of both actions. Miles v. Garrison, 3 Keyes (N. Y.), 40; Boyle v. Robbins, 71 N. Y., 132; Civil Code, secs. 92 and 118; Gunn v. Gudehus, 15 B. Mon., 449; Curd v. Lewis. 1 Dana., 351; Warren v. Glynn, 33 N. Y., 340; Baker & Rubel v. Whipps, 6 Ky. Law Rep., 307.

2. Entries in books of original entry have been allowed to be introduced in deference to the business world, and to the fact that when made contemporaneously with the transactions which they purport to record, they are suppose to speak the truth, because there is every motive ordinarily for verity and none for falsity. In the same way, if an account is kept of large business transactions, not by entries in the books, but by the preservation of the original data, they should have the same self-deserving effect and influence as original book entries.

3. The reason for the rule that in order to introduce entries in books of original entry you must produce the man who made them, or account satisfactorily for his absence and prove his handwriting, is based upon the theory that if the party relying upon the evidence does not do so, he is supposed to have some sinister motive for failing to do so. Whenever, therefore, for *any good reason* this can not be done, it is competent to prove the original entries by any competent person, and in the same way it is competent to prove the original data preserved in any proper way. Greenleaf on Evidence, 1 vol., 15th ed., sec. 120; Greenleaf on Evidence, 16th ed., sec. 120a; Tabое v. Riggs, 1 Pet., 596; 1 Greenleaf on Evidence, sec. 82; Chisholm et al. v. Beeman Medicine Co., 43 N. E., 796; Donovan v. Boston M. R. Co., 53 N. E., 583; Northern Pacific Railway Co. v. Keyes et al., 91 Fed., 47; Commonwealth v. Tate, 89 Ky., 587.

4. Wherever an amount is due, and it is the duty of the

Vol. 116]. APRIL TERM, 1903. 265

Lou. Bridge v. L. & N. R. R. Co.   P., C. C. & St. L. R. R. Co. v. Same.

debtor to know the amount of the debt, then interest runs on the amount from the time it should have been paid. Henderson Bridge Co. v. O'Connor & McCulloch, 86 Ky., 303; Schmidt, Trustee, v. L. & N., 85 Ky., 289.

5. This is essentially a suit for an accounting, and the prayer in this case is the usual prayer in such cases, and that is to have the accounts stated, and for a judgment for the amount which might be shown to be due. In such a case such a prayer is sufficient for the recovery of interest, that being a part of the amount due as much as the principal itself.

Under our Code, section 90, wherever there is a defense made to the action judgment should go for whatever upon the whole record the plaintiff is shown to be entitled to, and if the record in this case shows that appellee was entitled to interest under the authorities, the prayer under section 90, in view of the fact that there was a defense, is sufficient. Bank of Russellville v. Coke, 20 Ky. Law Rep., 291.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

On June 5, 1872, a contract was made between the Louisville Bridge Company, the Louisville & Nashville Railroad Company, the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, and certain other railroad companies, by which the railroad companies agreed to send their traffic over the bridge, and bound themselves to pay the bridge company such rates therefor as would pay certain fixed charges, create a sinking fund to meet an outstanding debt, and pay the stockholders a given annual dividend. This contract is set out in the opinion of this court in the case of Pittsburg, C., C. & St. L. Railway Co. v. Dodd., 115 Ky., 176, 25 R., 255, 72 S. W., 822. By the terms of the contract, the railroad companies using the bridge were placed on terms of absolute equality; that is, each was to pay at the same rate for traffic it did over the bridge. For convenience, the Louisville & Nashville Railroad Company did not pay its tolls directly to the bridge company, but paid them to the connecting lines north of the river, and they settled with the bridge company. After the rates had been fixed,

266        KENTUCKY REPORTS.        [Vol. 116

Lou. Bridge v. L. & N. R. R. Co.   P., C. C. & St. L. R. R. Co. v. Same.

and things had gone on for a number of years, an arrangement was made by which the bridge company did not require the roads north of the river to pay the full amount of their tolls, but at the end of each quarter the charges were rebated to them to the extent that there was a surplus over and above what was called for by the contract, and they were only required to pay to the bridge company the balance. This was without the knowledge or consent of the Louisville & Nashville Railroad Company, which continued to pay the full tolls. The rebating of the tolls began about the year 1881, and was not discovered by the Louisville & Nashville Railroad Company until some time in the year 1888, when some facts came to the knowledge of its president which led him to suspect what was going on. He wrote to the bridge company, complaining, but nothing was done, although various communications passed between the parties. Finally, in the year 1892, the Louisville & Nashville Railroad Company filed this suit against the bridge company and the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company, seeking to recover of them on account of the excessive tolls charged for the years 1881 to 1891. About the same time it filed another suit to recover for the same matters for the year 1892. In the latter suit, amended pleadings were filed, setting up a like claim for the years 1893, 1894 and 1895. Finally this case was tried, and a judgment rendered in favor of the Louisville & Nashville Railroad Company. The defendants appealed to this court, and the judgment was affirmed. See Louisville Bridge Company v. Louisville & Nashville Railroad Company, 106 Ky., 674, 21 R., 271, 51 S. W., 185. After that judgment had been rendered, the defendants filed an amended answer in the other suit, involving the years from 1881 to 1891; pleading that judgment in bar of the action. The court sustained a demurrer

to the pleading. Evidence was then heard, and, the case being submitted, the court gave judgment in favor of the Louisville & Nashville Railroad Company for the years 1888, 1889, 1890 and 1891, but dismissed its claim as to the years prior to 1888. From this judgment the defendants have appealed, and the plaintiff prosecutes a cross-appeal. The matters mainly relied on for reversal on the original appeal are the ruling of the court on the plea in bar, and its admission of the evidence offered by the plaintiff to make out its case.

As to the plea in bar, it is earnestly maintained by the appellants that the whole claim for all the years from 1881 to 1895 was based on the same contract, and, being an entirety, the plaintiff could not split its cause of action and sue for part of it in one suit and for the remainder in another. Numerous authorities are cited by counsel in support of the proposition that, where an entire cause of action is split, a judgment in one case will bar a second action for the rest of the claim. The principle is sound, and has been applied very often by the courts. But it has no application where the defendant consents to the splitting of the cause of action. A party to an action is never allowed to take advantage of that which he consented to, and his consent may be shown expressly, or it may be implied from the circumstances, as in other cases. Both the actions referred to were brought in the same court, and near the same time. The defendants appeared in both actions, and, without making any objection to the cause of action being split, or the bringing of two suits, filed a general demurrer to the petitions. These demurrers were heard by the court together, but one opinion being delivered, the court treating the two actions as one. The demurrer was sustained, amended pleadings were filed, the general demurrer was filed again,

268 , KENTUCKY REPORTS. [Vol. 116

Lou. Bridge v. L. & N. R. R. Co. P., C. C. & St. L. R. R. Co. v. Same.

and again the two actions were heard together by the court, and the demurrers were overruled, the court delivering, as before, but one opinion in the two actions. After this, without any objection to the bringing of two suits, the defendants filed answer in each, and the issues were made up, the two actions moving on together side by side; and no objection was made until the year 1897, or something like five years after the suit was brought, when, one of the actions having been tried, an amended answer was filed, pleading the judgment in that action in bar of the other. In the one action the plaintiff sought to recover for the *time* down to the year 1891, and in the other for the time after 1891. If objection had been made to the separation of the cause of action, the plaintiff might have dismissed one suit without prejudice, and set up the entire cause of action in the other. This would have profited the defendants nothing. It was more convenient to the parties to practice the claim for the two periods separately, for the reason that the evidence was different, and it would have been somewhat confusing to have prepared the whole matter in one suit. Besides, a very large sum of money was sued for—one half a million of dollars—and the bridge company had nothing to gain by advertising the large claim against it in one suit. When a party is put to an election, and elects what course he will follow, he can not thereafter abandon that election to the prejudice of the other party. When the two suits were filed and were heard together as one action on the demurrers, it was incumbent on the defendants to make objection to the form of proceeding then or not at all. Their silence then was an acquiescence in the prosecution of the two actions. One of the objects of the Code is to expedite legal proceedings by requiring objections not going to the merits of the action to be made

when the occasion for them arises. All such objections are waived if not made before issue is joined on the merits. Gunn v. Gudehus, 15 B. Mon., 449. All objections of mere form come within this rule, which is founded upon reasonable principles, for otherwise the rules of procedure, which are intended to facilitate the administration of justice, become in the hands of the skillful practitioner the instruments for defeating justice. Curd v. Lewis, 1 Dana, 351; Warren v. Glynn, 37 N. H., 340. Under the facts as shown by the record, we conclude that the defendants acquiesced in the bringing of the two separate actions, and by their course led the plaintiff to understand that the prosecution of the two actions was consented to by them, or at least that the objection thereto was waived. After all this, it was too late, after one action had proceeded to judgment, to object in the other action to that which for three years had at least impliedly been consented to.

The objection as to the admissibility of the evidence arises in this way: The bridge company kept no record of /the business done by the Louisville & Nashville Railroad Company, as it paid its tolls to the connecting lines, and they settled with the bridge company. When it became necessary to ascertain how much the tolls of the Louisville & Nashville Railroad Company amounted to, a very difficult question was presented, as no record of the payments of the money had been kept. Previous to the year 1888, the Louisville & Nashville Railroad Company had no records at all on the subject; but after the year 1888 it kept the waybills on the freight, or, where the waybill followed the goods, the transfer slip, from which the waybill was made out, was preserved. From these original papers kept by the railroad company, with much labor, it made out a detailed statement of the tolls paid by it subsequent to the year

**270** KENTUCKY REPORTS. [Vol. 116

Lou. Bridge v. L. & N. R. R. Co.   P., C. C. & St. L. R. R. Co. v. Same.

1888. Objection is made as to the competency of these pa-
pers, on the idea that they were simply loose memoranda.
This can, not be maintained. They were the original and
best evidence of the transaction, and were the record kept
by the railroad company to show its transactions. In
cases of this sort the law does not demand impossibilities;
it only demands the best evidence practicable; and no wit-
ness could carry in his mind these transactions. The only
possible way to prove them is from the record kept at the
time the transactions occurred. It is also objected that
these original papers were not in fact produced before the
commissioner to whom the case was referred to state the
account; but he reports that he examined them, and that
they were not filed for the reason that they would fill up the
commissioner's office, and were too numerous to be brought
into court. This was all that the plaintiff could do. The
defendants and their attorneys were also afforded oppor-
tunities to examine the papers. The defendants also com-
plain that the statements of the account made out from
these papers were allowed in evidence. Proof was taken
by the officer of the railroad under whose supervision and
oversight the work was done, and he testifies to its correct-
ness, and that it was done under his eye; that is, that he
superintended it, checked it up, and knew it to be correct.
It was unnecessary to bring in all the clerks who had made
out the original waybills or prepared the numerous state-
ments. The waybills, being the records of the company of
its transactions made at the time, were original evidence,
and admissible without further proof, because made and
kept as a record in the usual course of business. The proof
by the two witnesses who testify to the correctness of the
statements made up from these waybills was sufficient to
make out a *prima facie* case, which was supported by the

commissioner's own investigation, and his finding the state-
ments correct in so far as he tested them; but, of course,
he could not examine all the items.   The papers would,
perhaps, have filled the courtroom, and no good could have
come from bringing them in before the judge, for no court
could go through all these papers and make up a statement.
If he did it, not being a practiced accountant, his work
might have been worth intrinsically less than his commis-
sioner's.   Besides, the defendants took no proof.  The roads
north of the river had their records, and, if the proof by
the plaintiff was not correct, they had it in their power to
show the truth.   This they made no effort to do.   For the
years after 1892 there was little dispute about the amount
of the tolls.   The result reached by the commissioner for the
years from 1888 to 1891 corresponds substantially with the
amount fixed for the years after 1892.   The cardinal feature
of the common law is its want of specific rules.   It rests on
a few general principles.   It requires the best evidence that
the case is reasonably capable of, but it requires no more.
The issue in this case depended upon a statement to be
made up from thousands of waybills, which, if all brought
in, would have filled up the commissioner's office.   The only
practical way of getting at the truth was to make out a
statement from these waybills.   If either party doubted the
accuracy of the statement when prepared, the court could
afford him access to the papers, and give him opportuni-
ties to manifest the truth to him.   To demand of the plain-
tiff more than was shown here would be to deny a recov-
ery in cases of this character.   The rule of evidence is that
no evidence shall be received where there is better evidence
which may reasonably be had.   It is intended to prevent
fraud, but it is not intended to prevent the administration
of justice, where all the evidence is produced by the party

of which the case is reasonably susceptible.   In Northern
Pacific Ry. Co. v. Keyes (C. C.), 91 Fed., 47, where similar
tables were introduced in evidence and objected to, the
court said: "To have called each of the clerks would have
added very little to the trustworthiness of the evidence.
No clerk conducted any entire investigation, but various
details were placed in the hands of forty or fifty different
employes, and each contributed his computation to the gen-
eral result.   No clerk could have testified that the tables
were correct, for the reason that they were not made by him;
neither could any single clerk testify that the figures from
which the tables were compiled were correct, for he only
contributed a small fragment to the general result.   The
method adopted was the only practicable one for conducting
the investigation.   It would have been absolutely impossi-
ble for any one man to have compiled the general result
without delaying the case for years.   A reasonable safe-
guard against falsification in the preparation of such state-
ments is furnished by placing the records from which they
are compiled freely at the disposal of the adverse party.
It was the duty of the companies to do this, and to give
the Attorney General the fullest assistance in explaining
such records, and to allow him to place the same in the
hands of expert accountants, if he so desired, for the pur-
pose of detecting error or falsification in the testimony as
prepared by the companies.   The record shows that this was
done throughout the taking of the testimony in these cases.
We must assume that the Attorney General was satisfied
of the correctness of the testimony, from the fact that he
declined to investigate its trustworthiness."   This seems
applicable to the case before us.   The evidence in the case
is the original record kept by the railroad company of the
transactions as they occurred.   The statements or tables

prepared by the clerks are not, properly speaking, evidence at all. They are only exhibits of the facts shown by the evidence. If the court doubted their correctness, he should have had correct statements or tables prepared; but it was not necessary to do this when those offered were proved to be presumptively correct, and there was no showing made that they were incorrect. The court has a sound discretion in determining matters of this sort, in the interest of substantial justice, and we see no error in the admission of the matters in question.

The defendants complain that interest was allowed on the amount found due the plaintiff. In the former case above referred to, of Louisville Bridge Company v. Louisville & Nashville Railroad Company, 106 Ky., 674, 21 R., 271, 51 S. W., 185, it was held not only that the defendant was liable, but that it was liable for interest from the date of the illegal exactions—at least, from the time it had information of the amount due the plaintiff. The chancellor seems to have followed this ruling. As to the cross-appeal of the appellee for the years previous to 1888, there being no record of the amount of tolls paid, we concur with the chancellor in refusing to give relief. The court will not guess at the amount of a judgment. The plaintiff must make out his case. If he can not do it, it is his misfortune that he has no evidence. It is true, we might infer from the facts shown by the record that appellee is entitled to something for these years, yet, after all, it would be a bald guess to fix any amount. But while we are unwilling to disturb the judgment on the cross-appeal, we have no doubt from the record that at least as much was due the appellee as the chancellor entered judgment in its favor for, and that, on the whole case, appellants have no substantial ground of complaint.

Lou. Bridge v. L. & N. R. R. Co.   P., C. C. & St. L. R. R. Co. v. Same.

As the bridge company and the Pittsburg, Cincinnati, Chicago & St. Louis Railway Company are not adversary parties herein, their rights as between themselves are not determined.

Judgment affirmed.

Petition for rehearing by appellant overruled.