## Kentucky West Virginia Gas Co. v. Frazier et al.

June 18, 1946.

Combs & Combs for appellant.
Wheeler & Wheeler for appellees.

Opinion of the Court by Judge Cammack— Reversing.

On August 8, 1879, C. C. Mills conveyed to his daughter, Mary Jane Ward, 100 acres of land located north and south of Trace Fork of Rockhouse Creek in Martin County. In 1899, Mary Jane Ward obtained 40 acres of land south of Trace Fork by patent from the Commonwealth. This patent apparently covered some of the land already owned by her. In 1900, Mary Jane, having married John K. Spriggs, conveyed the gas rights in the land described in the patent to John C. C. Mayo. The grantors named in this deed were Mary Jane Spriggs and John K. Spriggs, her husband. The appellant, Kentucky West Virginia Gas Company, obtained its title to the gas rights in controversy from this source.

In 1910, Mary Jane, having previously divorced John K. Spriggs, and using the name of Mary Jane Ward, conveyed a tract of land containing the land in controversy to her daughter, Martelia Perry. The appellees, W. A. Frazier, Ralph Stafford, and Jim Webb, now hold a lease to the gas rights in two tracts, the titles to which were derived from this source. One tract is north of Trace Fork and contains 40 acres. The other, which is the subject of the controversy, is south of Trace Fork and contains 26 acres. Frazier obtained the leases in 1942 and employed Ralph Stafford to abstract them. Stafford's abstract certified the titles to be good. For his services Stafford was later given a 3/16 share. Webb acquired his 1/8 share in payment of equipment furnished.

Frazier, with Stafford as his spokesman, visited E. E. Clark, the Company's superintendent of realty, in Prestonsburg, to secure a gas purchase contract. Clark testified he showed them a large multicolored wall map of the land in that vicinity and pointed out to them that the Company claimed to own all the acreage on Trace Fork except a tract colored green on the map (indicating its ownership by Warfield Natural Gas Company). The excepted tract was north of Trace Fork and labeled as the "M. J. Spriggs and L. Ward tract." Clark testified that Stafford or Frazier, after looking at the map, said, "Well, I guess that is our tract." The Company's land was colored red on the map. Frazier's testimony concerning this meeting was, in substance, that neither

he nor Stafford understood the colors on the map; that Clark told them, "If the land was on the right hand side of the creek, the Company didn't own it"; and that he, Frazier, knew his lands to be on the right of the creek as the creek runs.

As a result of this meeting the appellees submitted their leases and abstracts to Clark, who forwarded them to C. P. Van Gilst, vice president of the Company, at Ashland, recommending approval of a gas purchase contract. After retaining these leases for some 15 days, the usual gas purchase contract was made whereby the Company agreed to buy the gas produced by appellees, to be delivered at its main line. The sellers warranted title to the gas.

Shortly after Frazier began drilling it was discovered by one of the Company's scouts that the well was being drilled on the 40 acre tract south of Trace Fork owned by the Company. This information was relayed to Clark, who, after a hurried inspection, notified Frazier that he was drilling on the Company's land. At this time Frazier had drilled 300 feet. Both parties rechecked their titles and had various conferences in an attempt to settle the dispute. However, Frazier continued drilling. At 537 feet he struck gas, constructed a pipe line 1800 feet to the Company's main line and prepared to make delivery. At one time both parties agreed to have W. R. Richmond, a competent surveyor who had surveyed the land in 1907, to determine whether the well was located on the Company's land. But when he determined it was, no agreement was reached.

The appellees brought this action to enforce their contract and to recover $3,000 damages as the cost of drilling the well. The Company alleged mutual mistake, asked for a cancellation of the contract and that its title be quieted. The appellees, by reply and amended petition, pleaded estoppel, adverse possession and sought additional damages of $3,000 as profit they would have made had the contract been carried out and $500 for drainage. The lower court adjudged the title of the 40 acre tract to be in appellees and awarded them $6,500 damages.

The Company contends that the judgment is in error on all counts. With its contention we agree. The proof conclusively establishes that the land described

in the Company's deed is south of Trace Fork and covers that tract on which the well has been drilled. In addition to the testimony of Clark and the Company's engineer, the testimony of Richmond, a competent surveyor, and R. S. Mollett, a local inhabitant, substantiates this conclusion. It then becomes apparent that both the Company and the appellees claim this land under a common source of title, namely, Mary Jane Ward. Since she conveyed the oil and gas rights to John C. C. Mayo, the Company's predecessor in title, 10 years before she purported to convey the entire fee to Martelia Perry, the appellees' predecessor in title, it follows that superior title to the oil and gas rights rests in the Company. While it may be conceded that none of the appellees' witnesses were aware of the Mayo deed, nevertheless it was of public record and the appellees were upon constructive notice of its existence.

Notwithstanding the record title, the appellees were shown a map and told that the Company claimed ownership of all the lands on Trace Fork except one piece on the north, colored in green, which was pointed out to them. At the same time they were also told that the tract not owned by the Company was on the right of the creek. The appellees, however, insist that the Company did not claim the tract in controversy. This contention is based on the fact that they understood the right of the creek to be on the south or on the "right as the creek runs." We are of the opinion that the usual and accepted meaning of this language, as shown by the proof, is otherwise.

The appellees also argue that the Company was given the leases and abstracts to inspect, and, was thereby made aware of their claim of ownership; that it executed the contract and remained silent while they drilled the well; and that it is now estopped to deny ownership in them. Such facts are not sufficient to create an estoppel in pais. In the first place there was no false representation made by the Company either in words or conduct. Clark, its agent, knew and explained to the appellees what the Company owned. Secondly, the appellees placed no reliance on the Company's conduct. Their claimed ownership was based on their leases and abstracts and not on anything said or done by the Company. Therefore, the appellees can not claim estoppel due to silence and inaction of the Company

when they had equal opportunity and means of obtaining information as to ownership by a thorough investigation of the deeds of record. And lastly, the appellees warranted title to the Company which thereby had a right to rely on such representation rather than to investigate, determine and notify the appellees in whom the title was vested. See discussion on elements of estoppel in pais, 19 Am. Jur., Estoppel, Sections 42 and 55. Further, it is undisputed that, as soon as the Company learned of the drilling on its land, it notified Frazier of his mistake.

Since we hold the title of the gas rights to be in the Company, it necessarily follows that any award to appellees for profits lost and drainage was erroneous.

There remains the $3,000 awarded as the cost of drilling the well. This award was erroneous in that it allowed recovery for that part of the well completed after the Company notified Frazier that he was drilling on its land. The work done by the appellees after notification was at their own peril, and its cost is not recoverable. Restatement, Contracts, Sections 352 and 336. Williston on Contracts, Vol. 5, sec. 1459, n. 12. Furthermore, the award was based on Frazier's statement that the well cost around $2,200 to $2,500 and that his time was worth $500. He kept no record of the expenses and introduced no evidence of the cost of a single item of equipment or charge for labor. It was a statement of a lump sum unsupported by any facts. We have heretofore held that facts must be shown which afford a basis for measuring or computing damages with reasonable certainty. Louisville Bridge Co. v. Louisville & N. R. Co., 116 Ky. 258, 75 S. W. 285, 25 Ky. Law Rep. 405; Bugg & Franks v. Jones, 183 Ky. 500, 209 S. W. 514; Western Union Telegraph Co. v. Ramsey, 261 Ky. 657, 88 S. W. 2d 675, 103 A. L. R. 541. In this record there are no data, no expert testimony, and no itemized account for the court to determine, with any reasonable certainty, the cost of the whole well or the first 300 feet. The appellees therefore failed to introduce sufficient proof to warrant the $3,000 awarded.

Judgment reversed, with directions to set it aside, and to enter a judgment in conformance with this opinion.