Charlotte WHITE, Plaintiff,

v.

MANCHESTER ENTERPRISE, INC., et al, Defendants.

Civ. A. No. 93–206.

United States District Court,
E.D. Kentucky,
London Division.

Dec. 22, 1994.

---

5. The reader is referred to the *Lewellen* opinion for an extensive discussion.

936

Michael Dean and Marilyn Benge McGhee, London, KY, for plaintiff.

Timothy L. Wells, Smith & Wells, Manchester, KY, for defendants.

BERTELSMAN, Chief Judge:

## I. INTRODUCTION

Charlotte White alleges claims for defamation, invasion of privacy and outrageous conduct as a result of an allegedly untrue and insulting newspaper article published by defendants. This matter is currently before the court for consideration of defendant Manchester Enterprise, Inc.'s motion for partial summary judgment (doc. # 66) and plaintiff's motion for a trial date (doc. # 79). For the reasons set forth below, defendant's motion for partial summary judgment is denied in part and granted in part, and plaintiff's motion for a trial date is granted.

## II. FACTUAL BACKGROUND

In 1993, plaintiff Charlotte White was employed by a corporation called "Native America, Inc." In that position, she organized and promoted Native American pow-wows across the country.

Ms. White organized her first pow-wow in Hialeah, Florida. Ms. White's second pow-wow was to occur in Manchester, Kentucky during the spring of 1993.

On April 8, 1993, defendants published an article and editorial stating, in part, that Ms. White left "a trail of bad checks" and was "briefly jailed on charges of fraud" in connection with the Hialeah pow-wow. The article further stated that "White is in hiding because of money she owes to Native American entertainers who came to Florida in January after being guaranteed up to $75,000 in fees" and that she left a Native American, Jimmy Boy Dial, with $10,000 in unpaid hotel expenses.

The editorial accompanying the article provided, in part:

Reports have surfaced that the organizer of the Manchester event allegedly defrauded both the Native Americans that were participating and numerous hotels during a Pow-Wow she organized in Hialeah, Florida in January.

[I]n this instance there was a very good possibility that had the [Manchester] event gone on, someone (maybe us taxpayers)

would have been left holding a pretty hefty bag. . . .

[E]veryone, of course, is innocent until proven guilty. But there is enough evidence available to be pretty well convinced that this event will not happen, and if it does very few, if any, Native Americans will show up.

Although Ms. White admits that several days of rain hindered the success of the Hialeah pow-wow, she denies defrauding anyone, writing any bad checks, ever being jailed for any reason, being charged with fraud, responsibility for $10,000 in hotel expenses and being "in hiding."

Plaintiff initiated this action on August 2, 1993. On November 9, 1993, plaintiff's counsel submitted a written demand for retraction of the allegedly defamatory article. The November 9, 1993 letter was plaintiff's first written demand for a retraction.

Plaintiff has alleged claims for defamation, invasion of privacy and outrageous conduct. Plaintiff seeks punitive damages as well as compensatory damages and costs.

Defendant Manchester Enterprise, Inc. has moved for partial summary judgment (doc. # 66). Specifically, Manchester Enterprise, Inc. claims: (1) that plaintiff's failure to submit a written demand for retraction prior to initiating this action bars her from seeking punitive damages; (2) that plaintiff is not entitled to recover lost wages because the existence and amount of any wages that would have been generated from the Manchester pow-wow has not been shown with the requisite degree of certainty; (3) that there is no evidence to support plaintiff's invasion of privacy claim; (4) that there is no evidence to support plaintiff's outrageous conduct claim; and (5) that Ms. White should be declared a limited public figure for purposes of her defamation claim. The court conducted oral argument on these issues on December 9, 1994.

### III. ANALYSIS

*A. K.R.S. § 411.051 bars plaintiff from recovering punitive damages.*

According to K.R.S. § 411.051(1), "Punitive damages may be recovered only if the plain-

tiff shall allege and prove publication with legal malice and that the daily or other newspaper failed to make conspicuous and timely publication of a correction after receiving a sufficient demand for correction." K.R.S. § 411.051(2) provides:

A "sufficient demand for correction" is a demand for correction which is in writing; which is signed by the plaintiff or his duly authorized attorney or agent; which specifies the statement or statements claimed to be false and defamatory, states wherein they are false, and sets forth the facts; and which is delivered to the defendant prior to the commencement of the action.

■ Plaintiff admits that she did not submit a written demand for correction prior to commencing litigation. The plain language of the statute requires that the demand be submitted prior to commencing litigation.

Plaintiff alleges that, because defendants' statements are libelous per se, legal malice is presumed and she need not offer proof in support of her punitive damages claim, thereby alleviating the need for a pre-litigation correction demand. While Kentucky common law does in fact provide a presumption of legal malice where certain publications are defamatory per se (*See E.W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700 (Ky.App. 1978) and *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270 (Ky.App.1982)), these cases neither address nor negate the statutory obligation to make a demand for correction contained in K.R.S. § 411.051(1). Accordingly, as plaintiff failed to make a written demand for correction prior to filing her defamation claim, she is not entitled to punitive damages on that claim.

■ Having determined that K.R.S. § 411.051 bars plaintiff's claim for punitive damages on her defamation claim, the issue becomes whether K.R.S. § 411.051 also bars punitive damages for plaintiff's false light invasion of privacy claim. By its terms, § 411.051 applies to "any action for damages for the publication of a defamatory statement in a daily or other newspaper. . . ." Although, where appropriate, victims of wrongful publications may maintain claims for both defamation and false light invasion of privacy

**938**

(*McCall v. Courier–Journal & Louisville Times Co.*, 623 S.W.2d 882 (Ky.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982)), a plaintiff may not circumvent the required demand for retraction by classifying a defamation claim as one for false light invasion of privacy. *See, e.g., Fellows v. National Enquirer, Inc.,* 42 Cal.3d 234, 228 Cal.Rptr. 215, 721 P.2d 97 (1986) and *Magenis v. Fisher Broadcasting, Inc.,* 103 Or.App. 555, 798 P.2d 1106 (1990). Indeed, because the torts of defamation and false light invasion of privacy are so closely related, those courts deciding the issue have held that the procedural requirements applicable to one of these causes of action are applicable to the other as well. *See, e.g., Goldman v. Time, Inc.,* 336 F.Supp. 133 (N.D.Cal.1971); *Fellows v. National Enquirer, Inc.,* 42 Cal.3d 234, 228 Cal.Rptr. 215, 721 P.2d 97 (1986) and *Magenis v. Fisher Broadcasting, Inc.,* 103 Or.App. 555, 798 P.2d 1106 (1990). Accordingly, plaintiff's failure to submit a written demand for retraction prior to initiating this action, as required by K.R.S. § 411.051, bars her demand for punitive damages on both her defamation and false light claims.

### B. Genuine issues of material fact preclude summary judgment on plaintiff's invasion of privacy claim.

■ In 1981, the Kentucky Supreme Court specifically adopted the tort of false light invasion of privacy from the Restatement (Second) of Torts. *See McCall v. Courier–Journal & Louisville Times Co.,* 623 S.W.2d 882 (Ky.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982). To sustain an action for false light invasion of privacy, a plaintiff must establish: (1) that the false light in which she was placed would be highly offensive to a reasonable person; and (2) that the statement placing the plaintiff in a false light was published with knowledge that the statements were false or in reckless disregard for the false light in which the statements placed the plaintiff. *Yancey v. Hamilton,* 786 S.W.2d 854 (Ky.1990); *McCall,* 623 S.W.2d at 888.[1]

In this case, the false light in which defendants allegedly placed plaintiff would undoubtedly be highly offensive to a reasonable person. The article falsely stated that Ms. White had been jailed in Florida for fraud, that she left "a trail of bad checks" following the Hialeah pow-wow, that she defrauded both the Native American participants in the Hialeah pow-wow and the hotels in the Hialeah area, and implied that, had the Manchester pow-wow been allowed to proceed, she would have defrauded Clay County taxpayers as well.

■ As to whether defendants published the article and editorial with knowledge of the false light in which it placed Ms. White or with reckless disregard for the false light in which it placed Ms. White, there is ample evidence to create a genuine issue of material fact on this issue. Mr. Abner and Mr. Emond, co-authors of the article in question, obtained the vast majority of their information from an article in The Spike, a Native American newsletter published by Jimmy Boy Dial. Abner depo., doc. #26, p. 10. Mr. Abner testified that he first received the Spike article in the late afternoon Tuesday, performed his investigation, and completed the article for publication by 9:30 a.m. on Wednesday. Abner depo., pp. 13–14.

Although Mr. Abner spoke with Jimmy Boy Dial on the telephone to confirm that he

---

1. Plaintiff claims that, because she is a private individual and the statements in question were not concerning a matter of public interest, she need not establish that the statements were published with knowledge of or in reckless disregard for their falsity. Doc. 70, p. 10, fn. 5 (citing *Yancey v. Hamilton,* 786 S.W.2d 854 (Ky.1990) and *McCall v. Courier–Journal & Louisville Times Co.,* 623 S.W.2d 882 (Ky.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982)). However, those cases applied the simple negligence standard to private individuals only in the context of a defamation claim. Both cases specifically require knowledge of or reckless disregard for the falsity of the statements in relation to a false light invasion of privacy claim. *Yancey,* 786 S.W.2d at 860 ("[T]o prevail on his invasion of privacy claim, Yancey will have to prove respondents either knew of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which movant was placed. The actual malice standard will apply regardless of Yancey's status as a private individual or a public figure."); *McCall,* 623 S.W.2d at 888.

accurately reported the facts in the Spike article, there is considerable evidence that neither Mr. Abner nor Mr. Emond attempted to verify the facts underlying the Spike article. For example, the Manchester Enterprise article states, "As a result of the [unpaid] checks, White was breifly [sic] jailed in Hialeah on charges of fraud, according to the city attorney's office there. She posted bail, and has not been heard from there since, the spokesman added." Emond 9/30/93 depo., doc. # 25, exh. A. Yet, neither Abner, Emond nor anyone from the Manchester Enterprise ever contacted the Hialeah city attorney's office. Abner depo., p. 11.

Second, both the article and its headline refer to White leaving "a trail of bad checks." While the Spike article referred to one bad check written to a Ramada Inn in Hialeah, Mr. Emond (who wrote the portions of the article referring to the trail of bad checks) could not provide a source for his information regarding a trail of bad checks. Emond 9/30/93 depo., doc. # 25, p. 23. Instead, he testified that the language was mere "writer's license" and that he "used 'trail of bad checks' because we're dealing with native Americans and I think, I don't know whether the trail of tears came into our mind or along those lines...." *Id.*

Finally, the Manchester Enterprise article states, "Spokesmen for the motel chains involved would not comment, other than to say 'there was a problem during the event, but it was taken care of.'" Emond 9/30/93 depo., exh. A. However, Mr. Emond testified that Abner contacted the motel chains (Emond 9/30/93 depo., p. 29); Mr. Abner testified that his co-worker, Bobby Reid, contacted the motel chains (Abner depo., p. 12); and Mr. Reid testified that his role in the investigation was limited to making three phone calls—none of which were made to any hotel (Reid depo., pp. 3–7). Accordingly, construing the evidence in the light most favorable to Ms. White, there is a genuine issue of material fact concerning whether defendants published the article and editorial with reckless disregard for the falsity of the statements and the false light in which the article placed Ms. White.

## C. Defendants are entitled to summary judgment on plaintiff's outrageous conduct claim.

To sustain a claim for outrageous conduct, under Kentucky law, a plaintiff must establish: (1) the defendants' conduct was intentional or reckless; (2) "the conduct must be outrageous and intolerable in that it offends against the generally accepted standards of decency and morality;" (3) the defendants' conduct must cause the plaintiff to suffer emotional distress; and (4) the emotional distress must be severe. *Humana of Kentucky, Inc. v. Seitz,* 796 S.W.2d 1 (Ky. 1990); *see also Roush v. KFC National Management Co.,* 10 F.3d 392 (6th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 56, 130 L.Ed.2d 15 (1994) and *Craft v. Rice,* 671 S.W.2d 247 (Ky.1984). As to the outrageousness of the conduct, the Kentucky Supreme Court, adopting a comment from the Restatement (Second) of Torts, stated:

> It has not been enough that the defendant has acted with an intent which is tortious ..., or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice,".... Liability has been found only where the conduct has been so, outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Humana,* 796 S.W.2d at 3 (emphasis omitted) (holding that a 12 to 15 minute delay in responding to a hospital patient who had just given birth to a still born baby in a bedpan, telling the woman to "shut up" and informing her that the baby would be "disposed of" on the hospital premises was not sufficiently outrageous to constitute a tort).

In this case, viewing the evidence in the light most favorable to Ms. White, defendants, at most, acted recklessly in publishing false statements that were embarrassing to Ms. White and damaging to her reputation with minimal effort to substantiate their statements. While defendants' alleged actions are not something to be encouraged, their actions do not constitute extreme and outrageous behavior that must be regarded as atrocious and utterly intolerable in the

community. Therefore, defendants are entitled to summary judgment on plaintiff's outrageous conduct claim.

*D. Plaintiff is not a limited public figure.*

■ Because public figures assume the risk of closer public scrutiny than private individuals and because public figures enjoy greater access to the media to effectively rebut any false statements made about them, public figures must establish "actual malice," i.e., that the publication was made with knowledge of or reckless disregard for the falsity of the published statements, to recover for. defamation. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Warford v. Lexington Herald–Leader Co.,* 789 S.W.2d 758 (Ky.1990). In contrast, private individuals need only establish simple negligence to recover for defamation. *Warford,* 789 S.W.2d at 763; *McCall v. Courier–Journal & Louisville Times Co.,* 623 S.W.2d 882 (Ky.1981), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982).

■ The Supreme Court has defined two types of public figures—those who occupy positions of such persuasive power and influence that they are determined to be public figures for all purposes ·and those who are deemed public figures for only a limited purpose because they have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." *Gertz,* 418 U.S. at 345, 94 S.Ct. at 3009. To determine whether an individual is a limited purpose public figure, the court must examine three criteria: (1) whether a particular and identifiable public controversy existed prior to the time the defamatory statements generated their own controversy; (2) whether the plaintiff, by some voluntary act, involved herself in that controversy "to the extent that she either assumed a role of public prominence, or was in a position to influence others or the outcome of the controversy;" and (3) whether the plaintiff enjoyed "regular and continuing access to the media." *Warford,* 789 S.W.2d at 766; *see also Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *Gertz,* 418 U.S. at 352, 94 S.Ct. at 3013, and *Clark v. American Broadcasting*

*Co.,* 684 F.2d 1208 (6th Cir.), *cert. denied,* 460 U.S. 1040, 103 S.Ct. 1433, 75 L.Ed.2d 792 (1982).

■ In determining whether the required controversy existed, the court must examine whether people were actually debating a specific question or issue. *Warford,* 789 S.W.2d at 768. General public concern or newsworthiness is not sufficient to meet the controversy requirement. *Id.* The court should evaluate:

> [whether] the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment . . . . whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution. . . . [whether] the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants. . . .

*Warford,* 789 S.W.2d at 768 (quoting *Barry v. Time,* 584 F.Supp. 1110 (N.D.Cal.1984)).

■ In this case, no public controversy existed prior to defendants' publication of the allegedly defamatory statements at issue. Defendants admit that they had never heard of Charlotte White until she appeared at a Manchester City Council meeting to request that the City of Manchester run additional water lines to the site of the planned pow-wow. The additional water lines would cost approximately $10,000 which Ms. White agreed to pay out of the proceeds of the pow-wow. Her attendance at one city council meeting is the extent of her public involvement. She received no press coverage other than that of the Manchester Enterprise, and there is no evidence of public debate or discussion concerning the proposed water lines. Accordingly, plaintiff is not a limited public figure for purposes of this defamation action.

Defendants claim that Ms. White's single appearance at a Manchester City Council meeting to request that $10,000 worth of public funds be spent to run additional water lines to the pow-wow site satisfies the public controversy requirement for a limited public figure. However, both the United States Supreme Court and the Kentucky Supreme Court have clearly stated that general public

concern about wasteful public expenditures is not sufficient unless the individual is surrounded by a specific controversy. *Warford v. Lexington Herald–Leader Co.,* 789 S.W.2d 758 (Ky.1990) (concluding that assistant college basketball coach was not a limited public figure for purposes of article regarding recruiting violations); *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) (concluding that federal research grant recipient was not public figure for purposes of article reporting U.S. Senator Proxmire's Golden Fleece Award for egregious wasteful public spending, even though recipient enjoyed sufficient access to the media to rebut attacks on the value of his research). As the Court stated in *Hutchinson,* "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making a claimant a public figure." *Hutchinson,* 443 U.S. at 135, 99 S.Ct. at 2688; *see also Warford,* 789 S.W.2d at 766. Accordingly, defendants have failed to establish that Ms. White is a limited public figure.

### E. Plaintiff is entitled to submit her claim for lost wages to a jury.

 To assess damages, facts must be established which provide a basis for measuring or computing damages with reasonable certainty. *Commonwealth Department of Highways v. Jent,* 525 S.W.2d 121 (Ky.1975); *Kentucky West Virginia Gas Co. v. Frazier,* 302 Ky. 642, 195 S.W.2d 271 (1946). Ms. White admits that she actually lost money from the Hialeah pow-wow—her only attempt to organize and promote a Native American pow-wow prior to Manchester. Therefore, according to defendants, a damage award for lost wages in this case would be based on mere speculation.

Plaintiff relies on her deposition testimony to create a genuine issue of fact concerning the basis for her lost wages. At pages 68 through 70 of her deposition, Ms. White testified that she estimated that the Manchester pow-wow would have produced between $250,000 and $300,000 in gross receipts and that approximately $40,000 of that amount would funnel down to her personally. In addition, she estimated that her sons would have earned between $10,000 and $30,000 each, based on their role in the Manchester pow-wow. Ms. White also testified that she

has been unable to organize pow-wows in other areas or to secure similar employment in the Native American community due to the damage to her reputation and character caused by the Manchester Enterprise article. Based on Ms. White's deposition testimony and construing all evidence in the light most favorable to plaintiff, the court concludes that defendant's motion for summary judgment on plaintiff's claim for lost wages must be denied.

Therefore, the court being advised,

**IT IS ORDERED** that:

1. Defendant's motion for partial summary judgment (Doc. # 66) be, and it is, hereby **granted** as to plaintiff's outrageous conduct claim and plaintiff's request for punitive damages, but **denied** as to plaintiff's invasion of privacy claim and plaintiff's request for lost wages;

2. Plaintiff is not a limited public figure;

3. That a final pretrial conference will be held in this matter on **Friday, March 10, 1995 at 10:00 a.m.** in **Lexington, Kentucky.** The parties are directed to comply with this court's final pretrial order entered concurrently herewith; and

4. That a three-day jury trial will commence on **Monday, April 10, 1995 at 10:00 a.m.** in **Lexington, Kentucky.**