[L.A. No. 32082. July 31, 1986.]

ARTHUR FELLOWS, Plaintiff and Appellant, v.
NATIONAL ENQUIRER, INC., Defendant and Respondent.

**COUNSEL**

Marvin Gross, James M. Simon and Grayson & Gross for Plaintiff and Appellant.

John G. Kester, Richard S. Hoffman, Williams & Connolly, Richard H. Borow, Jon W. Davidson and Irell & Manella for Defendant and Respondent.

**OPINION**

**BROUSSARD, J.**—Under Civil Code section 45a, language that is defamatory only by reference to extrinsic facts is not actionable unless the plaintiff can prove special damages.[1] Special damages are defined in Civil Code section 48a as damages to property, business or occupation.[2] In this case

---

[1]Section 45a provides: "A libel which is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact, is said to be a libel on its face. Defamatory language not libelous on its face is not actionable unless the plaintiff alleges and proves that he has suffered special damage as a proximate result thereof. Special damage is defined in Section 48a of this code."

[2]Section 48a defines general and special damages for purposes of defamation actions as follows: "(a) 'General damages' are damages for loss of reputation, shame, mortification and hurt feelings; [¶] (b) 'Special damages' are all damages which plaintiff alleges and proves that he has suffered in respect to his property, business, trade, profession or occupation, including such amounts of money as the plaintiff alleges and proves he has expended as a result of the alleged libel, and no other."

we must decide whether the special damages rule of section 45a applies when a defamatory publication gives rise to an action for false light invasion of privacy rather than libel. We conclude that when a false light action is based on a publication that is defamatory within the meaning of the statute, pleading and proof of special damages are required.

I.

The August 17, 1982, edition of the National Enquirer carried a photograph of plaintiff Arthur Fellows and actress Angie Dickinson over the caption, "ANGIE DICKINSON [¶] Dating a producer." The accompanying two-sentence article stated: "Georgeous Angie Dickinson's all smiles about the new man in her life—TV producer Arthur Fellows. Angie's steady-dating Fellows all over TinselTown, and happily posed for photographers with him as they exited the swanky Spago restaurant in Beverly Hills."

Shortly after publication, Fellows' attorney wrote a letter to defendant National Enquirer, Inc. (hereafter the Enquirer) asserting that the article was false and demanding a correction. The Enquirer's attorney wrote back expressing confusion about the nature of the alleged falsity. Fellows' attorney then wrote a second letter, which stated: "The article is false because Mr. Fellows has never dated Miss Dickinson, is not 'the new man in her life,' and has been married to Phyllis Fellows for the last 18 years."[3] The Enquirer subsequently rejected the retraction request and Fellows filed the present action.

Plaintiff's initial complaint alleged libel, false light invasion of privacy, intentional and negligent infliction of emotional distress and "conscious disregard" (Mrs. Fellows was added as a plaintiff in the latter three causes of action). The libel count alleged defamation based on facts extrinsic to the article: "Said article is defamatory in that said article was understood by those who read it or heard it [sic] and who have knowledge of plaintiff's marital status to mean that plaintiff was engaged in improper and immoral conduct." The privacy cause of action was based on the same factual allegations and asserted that the Enquirer's article had placed Fellows before the public in a false light as "steady-dating" Ms. Dickinson and as the "new man in her life," and also had cast him in a false light in the eyes of those who knew of his marital status by suggesting that he was engaged in improper or immoral conduct. Both the libel and false light causes of action alleged that the Enquirer had published the article with knowledge of its

---

[3]Statements made by plaintiff's counsel in the trial court suggest that the Enquirer photograph had been taken as plaintiff and Ms. Dickinson left a restaurant after dining with Mrs. Fellows and one or two other people.

falsity or with reckless disregard for whether it was false. Both causes of action also sought general damages for plaintiff's loss of reputation, shame, mortification and hurt feelings. It also was alleged, on information and belief, that plaintiff had suffered special damages to his business as a film producer by a "decline in the amount of new work normally to be expected" and by damage to his "business relationships with members of the film industry." The complaint included a demand for $5 million in punitive and exemplary damages.

The Enquirer demurred generally to the complaint. It attacked both the libel and false light claims on the ground that special damages had not been pleaded with sufficient specificity. The Enquirer further argued that the false light claim was duplicative of the defamation claim and should be dismissed as superfluous. The demurrer also challenged the remaining causes of action on grounds not relevant here.

The trial court overruled the demurrer to the libel count, although it expressed skepticism that plaintiff would be able to prove special damages and indicated that defendant would be free to renew its special damages challenge to the amended complaint. The court also overruled the demurrer with regard to the intentional infliction of emotional distress claim, again noting that its ruling was "without prejudice" to further challenges by defendant. The court sustained the demurrer to the false light claim on the ground that it was "redundant" of the libel claim, but granted leave to amend. The demurrer also was sustained to the remaining causes of action.

Plaintiff filed a first amended complaint that restated the original libel cause of action, expanded the allegations of the invasion of privacy claim, and again included counts for intentional and negligent infliction of emotional distress. In the amended complaint, the false light claim alleged only general damages and did not include any allegations of injury to business. The Enquirer again demurred to the entire pleading on grounds similar to those previously asserted, with emphasis upon the alleged inadequacy of the special damages allegation. At the hearing on this demurrer, plaintiff's counsel conceded that no special damages had been suffered, and acknowledged that it would be "highly improbable [plaintiff] will have special damages." Counsel maintained, however, that such damages were not a prerequisite to a cause of action for invasion of privacy. The court this time sustained the demurrer to all causes of action except that for negligent infliction of emotional distress, again granting leave to amend. The court expressly stated that it had sustained the demurrer to the libel and false light claims because of the absence or insufficiency of the special damages pleading.

Plaintiff then filed his second amended complaint. In view of his concession that he had not suffered any special damages, plaintiff did not reassert

a cause of action for libel, but continued to allege a cause of action for false light invasion of privacy. In this complaint, however, he deleted loss of reputation from his request for general damages and sought damages only for shame, mortification and hurt feelings. The causes of action for infliction of emotional distress were once again included.

Defendant again demurred to all causes of action. The Enquirer argued that plaintiff's failure to plead special damages barred a cause of action for false light invasion of privacy as well as an action for libel. The trial court agreed, and sustained the demurrer without leave to amend. The court based its ruling expressly on this court's decision in *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 35, footnote 16 [81 Cal.Rptr. 360, 459 P.2d 912]. The court also sustained the demurrer to the causes of action for infliction of emotional distress.[4] It then entered an order of dismissal.

On appeal, plaintiff argued that the special damages requirement in libel *per quod* actions should not apply to an action for false light invasion of privacy, which plaintiff asserted is an independent tort designed to redress injuries to interests separate and distinct from the interests at issue in a defamation action. Defendant answered by arguing that plaintiff's view would defeat the legislative policy underlying the special damages requirement since virtually all libel actions could be brought on the alternative theory. The Court of Appeal agreed with plaintiff and reversed the dismissal order. We granted review.

## DISCUSSION

An invasion of privacy by publicity that places the plaintiff in a false light in the public eye was first identified as a distinct tort in the late Dean Prosser's well-known 1960 law review article, *Privacy* (1960) 48 Cal.L.Rev. 383. Prosser considered over 300 cases decided in the 70 years since Warren and Brandeis[5] had originated the concept of a legal right of privacy, and determined that the decisions revealed a complex of four independent torts. In addition to false light invasion of privacy, this now definitive formulation included intrusion upon one's solitude or seclusion, public disclosure of private facts and appropriation.

In order to be actionable, the false light in which the plaintiff is placed must be highly offensive to a reasonable person. (Rest.2d Torts, § 652E,

---

[4] The Court of Appeal stated that plaintiff had "abandoned his causes of action for intentional and negligent infliction of emotional distress and seeks reversal only to reinstate his cause of action for invasion of privacy."

[5] Warren and Brandeis, *The Right to Privacy* (1890) 4 Harv.L.Rev. 193.

p. 394.) Although it is not necessary that the plaintiff be defamed, publicity placing one in a highly offensive false light will in most cases be defamatory as well. The substantial overlap between the two torts raised from the outset the question of the extent to which the restrictions and limitations on defamation actions would be applicable to actions for false light invasion of privacy.

With the same pen he used to christen the false light tort, Dean Prosser expressed his concern about its future evolution in words that precisely describe the issue we confront over 25 years later. "The question may well be raised, and apparently still is unanswered, whether this branch of 'the tort is not capable of swallowing up and engulfing the whole law of public defamation; and whether there is any false libel printed, for example, in a newspaper, which cannot be redressed upon the alternative ground. If that turns out to be the case, it may well be asked, what of the numerous restrictions and limitations which have hedged defamation about for many years, in the interest of freedom of the press and the discouragement of trivial and extortionate claims? Are they of so little consequence that they may be circumvented in so casual and cavalier a fashion?" (Prosser, *supra,* 48 Cal.L.Rev. 401.)

The first answers to Dean Prosser's question were not long in coming. In its landmark decision in *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412], the United States Supreme Court held that a defamatory statement concerning a public official was protected by the First Amendment except when made with " 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (376 U.S. at pp. 279-280 [11 L.Ed.2d at p. 706].) The *New York Times* doctrine was later expanded to include public figures. (*Curtis Publishing Co.* v. *Butts* (1967) 388 U.S. 130 [18 L.Ed.2d 1094, 87 S.Ct. 1975].) In *Time, Inc.* v. *Hill* (1967) 385 U.S. 374, 387-388 [17 L.Ed.2d 456, 466-467, 87 S.Ct. 534], the United States Supreme Court for the first time considered the conflicting demands of the First Amendment and the right of privacy. In a case involving the false light tort, the court applied the actual malice standard of liability and thus balanced the competing interests in exactly the same manner as it had when reputation and speech competed in *New York Times.*[6]

---

[6]It remains an open question whether *greater* constitutional protections exist in privacy cases. In *Time, Inc.,* the court looked to the newsworthiness of the report rather than the status of the plaintiff. After that decision, however, the court decided *Gertz* v. *Robert Welch, Inc.* (1974) 418 U.S. 323 [41 L.Ed.2d 789, 94 S.Ct. 2997], holding that the actual malice standard was not constitutionally required where the plaintiff was a private person, even though the subject matter of the publication could be considered newsworthy. The court later observed that the question of whether a lesser standard could be applied to a private

In *Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 265 [208 Cal.Rptr. 137, 690 P.2d 610], this court recently held that plaintiff's failure to show a triable issue of fact as to actual malice barred not only his defamation claim, but also his claim for false light invasion of privacy and intentional infliction of emotional distress. We observed that the United States Supreme Court had "defined a zone of constitutional protection within which one could publish concerning a public figure without fear of liability. That constitutional protection does not depend on the label given the stated cause of action. . . . [L]iability cannot be imposed on any theory for what has been determined to be a constitutionally protected publication." (*Ibid.*)

In addition to the restricted liability compelled by the First Amendment, further protection is afforded defamatory speech by certain statutorily imposed limitations on defamation actions. In deciding whether such statutory provisions are applicable to a particular cause of action, the courts of this state have traditionally looked behind the label affixed to the complaint and examined the gravamen of the claim. Where the complaint is based on an offensive statement that is defamatory, plaintiffs have not been allowed to circumvent the statutory limitation by proceeding on a theory other than defamation.

A leading decision in this area is *Werner* v. *Times-Mirror Co.* (1961) 193 Cal.App.2d 111 [14 Cal.Rptr. 208]. Werner sued for invasion of privacy based on a 1958 Los Angeles Times story suggesting that he and his first wife had been involved in political scandals and criminal wrongdoing during his tenure as Los Angeles City Attorney 30 years earlier. Werner claimed that the article's allegations were false or misleading, and had caused him "deep humiliation, emotional distress, anxiety and embarrassment." The trial court dismissed the action because of plaintiff's failure to post the bond then required in libel actions (former Code Civ. Proc., § 830).

Without discussing the bond issue, the Court of Appeal observed that under Civil Code section 48a a plaintiff suing for libel may recover only special damages unless he has demanded a retraction of the offending

---

plaintiff in a false light action remained unanswered: "No objection was made by any of the parties to this knowing-or-reckless-falsehood instruction. Consequently, this case presents no occasion to consider whether a State may constitutionally apply a more relaxed standard of liability for a publisher or broadcaster of false statements injurious to a private individual under a false-light theory of invasion of privacy, or whether the constitutional standard . . . in *Time, Inc.* v. *Hill* applies to all false-light cases. Cf. *Gertz* v. *Robert Welch Inc.*, 418 U.S. 323." (*Cantrell* v. *Forest City Publishing Co.* (1974) 419 U.S. 245, 250-251 [42 L.Ed.2d 419, 425-426, 95 S.Ct. 465].)

statements and the demand has been refused.[7] Since Werner's complaint sought only general damages and did not allege that he had demanded a retraction, the statute would have clearly barred a libel action. In order to determine whether the statute also barred an action for invasion of privacy, the court looked to the policies underlying the retraction rule as described by Justice Traynor in *Werner v. Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121 [216 P.2d 825]. In the earlier *Werner* decision, this court rejected a constitutional attack on the retraction statute, finding "at least two bases on which the Legislature could reasonably conclude that the retraction provisions of section 48a provide a reasonable substitute for general damages in actions for defamation against newspapers and radio stations, namely, the danger of excessive recoveries of general damages in libel actions and the public interest in the free dissemination of news." (*Werner, supra,* at p. 126.)

After quoting extensively from the *Werner* court's discussion of the public policy rationale underlying section 48a, the Court of Appeal observed: "To extend the tort of invasion of privacy to the extent necessary to reach a determination that the appellant's amended complaint states a cause of action would be to ignore such declaration of public policy and to dilute the effect of such legislation. This court is not free to do so." (193 Cal.App.2d at p. 123.) Implicit in this observation is a determination that privacy suits threaten the freedoms of speech and press in the same manner as defamation suits. The court refused to "sanction an evasion" of the statutory protections. (*Id.,* at p. 122.)

This court adopted the *Werner* holding in *Kapellas v. Kofman, supra,* 1 Cal.3d 20. Kapellas was a candidate for the Alameda City Council and the mother of six children. A front-page editorial in the Alameda Times Star concluded that Kapellas would not be a suitable member of the city council since her obligations, in the opinion of the editorial writer, "'would seem to be more to her home and family, than to the city she adopted as home some years ago.'" (1 Cal.3d at p. 27, fn. 2.) In support of its thesis, the editorial cited numerous complaints and arrests involving the Kapellas children allegedly drawn from the local "police blotter." (*Ibid.*)

Kapellas filed a complaint alleging libel on behalf of herself, with separate counts alleging libel and invasion of privacy on behalf of her children.

---

[7]Section 48a provides in pertinent part: "1. In any action for damages for the publication of a libel in a newspaper, or of a slander by radio broadcast, plaintiff shall recover no more than special damages unless a correction be demanded and be not published or broadcast, as hereinafter provided. Plaintiff shall serve upon the publisher, at the place of publication or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that the same be corrected. Said notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous."

Defendant demurred to the libel counts on the ground that the publication was privileged in that it related to the qualifications of a candidate for public office, and upon the additional ground that plaintiffs had not made a sufficient demand for retraction. Defendant also demurred to the invasion of privacy count on the ground that the editorial concerned matters of public interest. The trial court sustained the demurrer without leave to amend and dismissed the action.

This court reversed the trial court's order with respect to the two libel counts, finding plaintiff's allegation of malice sufficient to overcome the qualified privilege granted by Civil Code section 47, subdivision 3, and finding plaintiff's demand for retraction sufficient to comply with the requirements of section 48a. Turning next to plaintiff's privacy claim, the court found the complaint insufficient to state a cause of action as either false light invasion of privacy or public disclosure of private facts. The court carefully distinguished between the two theories, observing that false light rested on the inaccuracy of the publication, whereas public disclosure of private facts by definition involved the publication of true facts. Because the latter theory is not concerned with falsity, the court found section 48a inapposite since a party would gain no relief from a subsequent retraction of the article.[8] (1 Cal.3d at p. 35.)

The court reached a different conclusion with respect to the potential false light claim: "Insofar as the instant plaintiff's right to privacy action is of the 'false light in the public eye' variety, *resting on the allegedly false nature of the editorial statements,* we find the action is in substance equivalent to the children's libel claim, and should meet the same requirements of the libel claim *on all aspects of the case,* including proof of malice . . . and fulfillment of the requirements of section 48a. . . . Since the complaint contains a specific cause of action for libel, the privacy count, if intended in this light, is superfluous and should be dismissed." (1 Cal.3d at p. 35, fn. 16, italics added.)

The *Kapellas* holding was unanimously reaffirmed in *Briscoe* v. *Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529 [93 Cal.Rptr. 866, 483 P.2d 34]. In that case, defendant published an article that correctly identified Briscoe as the perpetrator of a crime, but did not indicate that the crime had occurred 11 years earlier and that Briscoe had since led "an exemplary, virtuous and honorable life." (*Id.,* at p. 532.) Briscoe brought an action

---

[8]Nevertheless, the court found the editorial to be newsworthy and therefore privileged. (1 Cal.3d at pp. 35-39.)

for invasion of privacy based upon theories of public disclosure of private facts and false light. The bulk of the opinion addressed Briscoe's public disclosure claim and concluded that his identification as the perpetrator of an 11-year-old crime stated a prima facie claim of invasion of privacy.

Plaintiff's false light claim was based on the suggestion of the article that his criminal activity was of recent vintage. The court quoted from *Kapellas* to observe that "a 'false light' cause of action 'is in substance equivalent to . . . [a] libel claim, and should meet the same requirements of the libel claim. . . .'" (4 Cal.3d at p. 543.) It concluded that the allegations of the complaint were insufficient to support a false light claim since plaintiff had neither made a retraction request nor alleged special damages. "Plaintiff here alleged malice, but at no time complied with the requirements of section 48a. It would therefore be possible for him to amend his complaint to state a cause of action based on a 'false light' theory *only if he alleged special damages.*" (*Ibid.,* italics added.)

In addition to section 48a, other statutory and common law restrictions on libel and slander actions have been applied to nondefamation claims when such claims were based on defamatory language. In *Grimes* v. *Carter* (1966) 241 Cal.App.2d 694 [50 Cal.Rptr. 808], plaintiff brought an action for invasion of privacy and intentional infliction of emotional distress alleging that defendant had stated to a large number of people that she had engaged in sexual intercourse with several men. The trial court dismissed the complaint because of plaintiff's failure to post the bond formerly required in defamation actions.

The Court of Appeal observed that the case required that it decide whether "a plaintiff who essentially bases her cause of action upon facts which constitute defamation . . . can bypass the requirement of section 830 of the Code of Civil Procedure that an undertaking be filed for the protection of the defendant." (241 Cal.App.2d at p. 700.) Finding section 830 to be the "considered public policy of the state," the court concluded that "[i]t would not be proper for a court to permit a plaintiff to evade this public policy by announcing, as the plaintiff did in this instance, that she does not ask for damages for loss of reputation but only for the humiliation and emotional distress resulting to herself personally from the tort." On this basis the court affirmed dismissal of the emotional distress claim.[9] (*Ibid.*; see also *Huffaker* v. *McVey* (1917) 35 Cal.App. 302 [169 P. 704] [plaintiff required to post

---

[9]The court affirmed dismissal of the privacy claim for reasons unrelated to the bond requirement.

bond where defamation was basis of claim even though labeled as malicious prosecution].)[10]

Civil Code section 47 defines privileged publications and broadcasts and was originally limited in application to defamation actions. In *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], this court for the first time extended the privilege outside of the defamation context and held that section 47 barred an action for disparagement of title arising out of a notice of lis pendens. A Court of Appeal recently noted that the cases decided after *Albertson* "have applied the privilege to defeat tort actions which, however labeled and whatever the theory of liability, are predicated upon the publication in protected proceedings of an injurious falsehood." (*Block* v. *Sacramento Clinical Labs, Inc.* (1982) 131 Cal.App.3d 386, 390-391, fns. omitted [182 Cal.Rptr. 438].) *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592], is typical of the post-*Albertson* decisions: "To allow appellant to proceed with this cause of action would substantially defeat the purpose of the privilege enunciated in section 47. It would exalt a judicially derived cause of action . . . above clear legislative intention and operate as a severe deterrent to communications otherwise protected. Therefore, no such cause of action, based upon the defamatory nature of a communication which is itself privileged under the defamation laws, can be permitted." (60 Cal.App.3d at p. 579.)[11]

In *Flynn* v. *Higham* (1983) 149 Cal.App.3d 677 [197 Cal.Rptr. 145], the same Court of Appeal that decided the instant case considered whether a

---

[10]The court below relied heavily on *Kerby* v. *Hal Roach Studios* (1942) 53 Cal.App.2d 207 [127 P.2d 577], where an invasion of privacy action based on defamatory statements was permitted without the filing of a bond. After concluding that plaintiff had made out a claim for invasion of privacy, the *Kerby* court noted that although the claim was similar to libel, the plaintiff had not intended to allege libel and, in any event, had not posted the bond required for such actions. (53 Cal.App.2d at p. 214.) We find little significance in this decision. The *Kerby* case arose very early in the development of the privacy tort, long before false light publicity had been identified as an independent action, or the overlap of privacy and defamation had been recognized as an issue of concern. The court did not consider the applicability of the bond requirement to a privacy claim, nor did it consider the possibility that such a claim might be used to evade the statutory provision.

[11]The protections of section 47 have been applied to a variety of nondefamation causes of action, including, abuse of process (*Thornton* v. *Rhoden* (1966) 245 Cal.App.2d 80 [53 Cal.Rptr. 706, 23 A.L.R.3d 1152]; *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916 [134 Cal.Rptr. 145]; *Younger* v. *Solomon* (1974) 38 Cal.App.3d 289 [113 Cal.Rptr. 113]; *Umansky* v. *Urquhart* (1978) 84 Cal.App.3d 368 [148 Cal.Rptr. 547]); intentional infliction of mental distress (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626 [99 Cal.Rptr. 393]; *Lerette* v. *Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573 [131 Cal.Rptr. 592]; *Pettit* v. *Levy* (1972) 28 Cal.App.3d 484 [104 Cal.Rptr. 650]; *Scott* v. *McDonnell Douglas Corp.* (1974) 37 Cal.App.3d 277 [112 Cal.Rptr. 609]); inducing breach of contracts (*Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804 [42 Cal.Rptr. 314]; *Scott* v. *McDonnell Douglas Corp., supra*); interference with prospective economic advantage (*Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725 [151 Cal.Rptr. 206]); fraud and negligence (*Pettitt* v. *Levy, supra*).

false publication concerning a deceased person, barred if brought as a libel action, would support a claim for intentional infliction of emotional distress. The court held that "to allow an independent cause of action for the intentional infliction of emotional distress, based on the same acts which would not support a defamation action, would allow plaintiffs to do indirectly what they could not do directly. It would also render meaningless any defense of truth or privilege." (149 Cal.App.3d at p. 682.)

The overwhelming majority of decisions in other jurisdictions enforce defamation restrictions in actions for false light invasion of privacy when such actions are based on a defamatory publication. (*Cibenko* v. *Worth Publishers, Inc.* (D.N.J. 1981) 510 F.Supp. 761, 766 ["An action for defamation and a claim for false light invasion of privacy . . . are closely allied, and the same considerations apply to each." Libel defense of opinion applied to false light.]; *Rinsley* v. *Brandt* (10th Cir. 1983) 700 F.2d 1304, 1307 ["[I]n a false light privacy action, as in a defamation action, truth is an absolute defense. Similarly, the defense available in a defamation action that the allegedly defamatory statements are opinions, not assertions of fact, is also available in a false light privacy action."]; *Brown* v. *Boney* (N.C.App. 1979) 255 S.E.2d 784, 791 ["In a libel action, the defamatory statements must be false in order to be actionable, and an admission of the truth of the statement is a complete defense. . . . Likewise, with regard to invasion of privacy of the false light variety, it is essential that the matter published concerning the plaintiff is not true. . . ."]; *Gruschus* v. *Curtis Publishing Company* (10th Cir. 1965) 342 F.2d 775, 776 ["The general rule, frequently analogized to defamation, is that the action does not survive the death of the party whose privacy was invaded. . . ."]; *Michigan United Conservation Clubs* v. *CBS News* (W.D.Mich. 1980) 485 F.Supp. 893, 904 ["Each tort is directed toward a particular individual, and in the area of defamation this has given rise to the rule that a publication is not actionable unless it is 'of and concerning' the individual plaintiff. . . . This court can find no reason why a similar rule should not be extended to claims of false light."]; *Koussevitzky* v. *Allen, Towne & Heath* (Supreme Ct. 1947) 188 Misc. 479 [68 N.Y.S.2d 779, 785] [The doctrine that equity will not enjoin publication of a libel also precludes an injunction sought on a theory of false light invasion of privacy]; *Fouts* v. *Fawcett Publications* (D.Conn. 1953) 116 F.Supp. 535, 537 ["[T]he only reasonable conclusion is that any State which adopts the single publication rule for purposes of the tort of libel, would also adopt it and apply it, with the same test as to the date of accrual, in cases of wrongful violations of the right of privacy."]; *Smith* v. *Esquire, Inc.* (D.Md. 1980) 494 F.Supp. 967, 970 ["[W]here the basis of the cause of action is the false nature of the publication, *i.e.* a defamation, the action should be governed by the various limitations placed on an action for defamation. To hold otherwise would allow a plaintiff, in any defamation

action where there has been a general publication, to avoid the otherwise applicable one-year statute merely by phrasing the cause of action in terms of invasion of privacy."]; *McDonald* v. *Time* (D.N.J. 1981) 7 Med.L.Rptr. 1981, 1983 ["The court finds that the gist of these causes of action is defamation, and as such, they too are time-barred. . . . [¶] New Jersey courts look beyond the label affixed to the cause of action. . . ."]; but cf. *Wood* v. *Hustler Magazine, Inc.* (5th Cir. 1984) 736 F.2d 1085, 1088-1089 and *Rinsley* v. *Brandt* (D.Kan. 1977) 446 F.Supp. 850, 858 [libel statute of limitations not applied to false light invasion of privacy].)

It is also noteworthy that the American Law Institute has adopted the position that the restrictions on defamation actions should be applied to actions for false light invasion of privacy where supported by the policy behind the particular restrictive rule: "[A]nother important question is that of the extent to which common law and statutory restrictions and limitations that have grown up around the action for defamation are equally applicable when the action is one for invasion of privacy by publicity given to falsehoods concerning the plaintiff. These restrictions include, for example, the requirement that special damages be pleaded and proved by the plaintiff in any case in which the defamatory words are not actionable per se. . . . [¶] When the false publicity is also defamatory so that either action can be maintained by the plaintiff, it is arguable that limitations of long standing that have been found desirable for the action for defamation should not be successfully evaded by proceeding upon a different theory of later origin, in the development of which the attention of the courts has not been directed to the limitations." (Rest.2d Torts, § 652E, subd. (e), p. 399.)

Defendant has cited only one case that specifically considers the applicability of a special damages requirement to a false light cause of action. We have found only one other case on point, a later decision by the same court. In *Fogel* v. *Forbes, Inc.* (E.D.Penn. 1980) 500 F.Supp. 1081, the plaintiff brought actions for defamation and false light invasion of privacy, as well as other privacy claims, based on the publication of a single photograph. The court granted defendant's motion for summary judgment as to both the defamation and false light claims based on plaintiffs' failure to allege special damages. "Since the requirement of special damage is likewise applicable to invasion of privacy based upon 'Publicity placing person in false light,' and since plaintiffs in their depositions stated that they were unable to prove special damage, the plaintiffs are unable to establish an essential element for such a claim." (500 F.Supp. at p. 1088.) The court reached the same conclusion in *McCabe* v. *Village Voice, Inc.* (E.D.Penn. 1982) 550 F.Supp. 525, 529, footnote 9: "I note again plaintiff's failure to plead special damages. The policies which support the imposition of the

special damages requirement in actions for defamations also support a similar requirement in actions for false light.''

■ The applicability of the special damages requirement to a false light claim presents a question of first impression in this state. The court below held that even though plaintiff's complaint was based on language not defamatory on its face within the meaning of section 45a, proof of special damages was not required since the complaint alleged only a cause of action for false light invasion of privacy and did not allege a cause of action for libel. As we have seen, this holding is contrary to the overwhelming weight of authority in this state and in other jurisdictions, which holds that the limitations on liability for defamatory speech should be enforced irrespective of the theory of liability.

The court's holding rests on a superficially logical syllogism. Its initial premise is that the interests protected by false light invasion of privacy and defamation are entirely separate and distinct. ''Reputation . . . is not the interest affected, protected, or compensated in invasion of privacy cases. . . . [T]he wrong inflicted by an invasion of privacy is a direct injury to the plaintiff's feelings and peace of mind, and compensation is awarded for that injury, not for loss of standing in the eye of others.''

The court's second premise is that section 45a is concerned only with the ''protection of the plaintiff's *reputation* . . . [and] neither recognizes nor addresses the different, non-reputational interests protected, and injuries redressed, in invasion of privacy actions.'' (Original italics.) Based on these conclusions, the court found the special damage rule ''wholly inapposite'' to a cause of action for false light invasion of privacy.

Most of the court's lengthy opinion is devoted to establishing its initial premise that invasion of privacy and defamation are concerned with different interests.[12] Even assuming this premise to be true, however, where a

---

[12]The relationship between false light invasion of privacy and defamation has been the subject of much debate, disagreement and confusion. This disagreement has centered primarily on the extent to which the false light tort is intended to protect interests different from those interests protected by defamation actions. In *Kapellas* and *Briscoe* this court viewed false light and defamation as in essence equivalent. This view is consistent with Dean Prosser's assertion that ''[t]he interest protected [by the false light action] is clearly that of reputation, with the same overtones of mental distress as in defamation.'' (Prosser, *supra*, 48 Cal.L.Rev. 400.) This was also the position taken by the United States Supreme Court in its most recent discussion of the false light tort. (*Zacchini* v. *Scripps-Howard Broadcasting Co.* (1976) 433 U.S. 562, 573 [53 L.Ed.2d 965, 974-975, 97 S.Ct. 2849].) Some commentators have gone so far as to argue that false light invasion of privacy does not protect any interest independent of defamation that is worthy of protection. (Kalven, *Privacy in Tort Law—Were Warren and Brandeis Wrong?* (1966) 31 Law & Contemp. Probs. 326; Gerety, *Redefining Privacy* (1977) 12 Harv. C.R.–C.L.L.Rev. 233.) The North Caro-

complaint is based on a defamatory publication, this conceptual difference in the two torts does not justify making actionable an otherwise protected statement.

The restrictions and limitations on liability for defamatory speech have evolved over many years as courts and legislatures have attempted to balance the interest in reputation against the interest in speech. The existing balance protects some defamatory statements in recognition that a certain amount of " 'breathing space' " is necessary to maintain the vitality of the freedoms of speech and press. (*New York Times Co.* v. *Sullivan, supra*, 376 U.S. at pp. 271-272 [11 L.Ed.2d at p. 701].) The modern law of defamation has been primarily concerned with determining the point at which potential liability for defamatory speech intolerably "dampens the vigor and limits the variety of public debate." (*Id.*, at p. 279 [11 L.Ed.2d at p. 706].)

The fact that a defamatory statement may injure "feelings and peace of mind" as well as reputation does not lessen the importance of "uninhibited, robust, and wide-open" public discourse, nor should the protections afforded defamatory statements in the interests of providing a generous zone of lawful speech be abrogated merely because the statement contains a privacy-invading element. (*Id.*, at p. 270 [11 L.Ed.2d at pp. 700-701].) Courts should proceed very cautiously before upsetting the delicate balance that has developed in the law of defamation between the protection of an individual's interest in redressing injury from published falsehoods, and the protection of society's interest in vigorous debate and free dissemination of the news.

In most cases where defamation restrictions have been extended to false light claims the courts have acknowledged the theoretical differences in the interests protected, but have recognized as well that the different interests may be implicated by the same conduct. The *Werner* court expressly discussed this issue: "It is, of course, true that the tort of invasion of the right of privacy accords protection to a fundamentally different interest than that safeguarded by the law of defamation. But each of such interests conceivably

lina Supreme Court recently accepted this argument in a decision announcing that the false light tort would not be recognized in that state. (*Renwick* v. *News and Observer Pub. Co.* (1984) 310 N.C. 312 [312 S.E.2d 405].) Most writers recognize the conceptual differences in the torts, but find at least a substantial overlap in the interests protected. (See Wade, *Defamation and the Right of Privacy* (1962) 15 Vand. L.Rev. 1093, 1094-1095.) The Court of Appeal's analysis is misleading in part because it defines the interest protected by a right of privacy in general without distinguishing among the different interests safeguarded by the variegated tort. It may be true that one's sensibilities and peace of mind are primarily at issue in the pure privacy torts of intrusion and public disclosure of private facts; however, these interests are much less relevant in the appropriation tort, which is essentially concerned with protecting a proprietary interest, and in the false light tort, which is primarily intended to protect the integrity of one's public identity. (Gerety, *supra*, 12 Harv. C.R.–C.L.L.Rev. 255-261.)

could be invaded by the same publication in a particular case. . . . However, while the appellant in the present case has disclaimed any reliance on the law of libel, it is clear that he could not, in any event, recover under the theory of the tort of libel in the absence of a demand for a retraction and a failure to comply therewith . . . unless he could establish special damages. . . . Yet, assuming some of the statements of which the appellant complains in his amended complaint to be libelous in nature, to permit him to recover general damages in this case under the theory of the invasion of his right of privacy is to sanction an evasion of the provision of section 48a of the Civil Code." (*Werner, supra,* 193 Cal.App.2d at pp. 120-122, fns. omitted.)

We also disagree with the Court of Appeal's narrow interpretation of the policy embodied in section 45a. Justice Traynor explained the objectives of the statute in *McCleod* v. *Tribune Publishing Co.* (1959) 52 Cal.2d 536, 550 [343 P.2d 36]: "The purpose of the rule requiring proof of special damages when the defamatory meaning does not appear on the face of the language used is to protect publishers who make statements innocent in themselves that are defamatory only because of extrinsic facts known to the reader. For example, a newspaper might erroneously report that 'Mrs. *A* gave birth to a child last night.' Mrs. *A* has been married only a month. The language used will take on a defamatory meaning only to those who know when Mrs. *A* was married, and many of them will also know that the paper made a mistake. In such a case, general damages for loss of reputation may be trivial, and the paper's mistake may have been innocent, for the content of the report would not alert it to the possibility of defamation. It is not unreasonable therefore to require proof of special damages to establish a cause of action."

In *Werner* v. *Southern Cal. etc. Newspapers, supra,* 35 Cal.2d 121, this court considered the related rule of section 48a, which limits plaintiffs to recovery for special damages and substitutes a printed retraction for general damages. The court's discussion of the basis for a rule limiting recovery to special damages is applicable here: "In view of the complex and far-flung activities of the news services upon which newspapers and radio stations must largely rely and the necessity of publishing news while it is new, newspapers and radio stations may in good faith publicize items that are untrue but whose falsity they have neither the time nor the opportunity to ascertain. The Legislature may reasonably conclude that the public interest in the dissemination of news outweighs the possible injury to a plaintiff from the publication of a libel, and may properly encourage and protect news dissemination by relieving newspapers and radio stations from all but special damages resulting from defamation, upon the publication of a retraction." (35 Cal.2d at p. 128.)

The United States Supreme Court recognized the same danger in *Time, Inc.*: "We create a grave risk of serious impairment of the indispensable service of a free press in a free society if we saddle the press with the impossible burden of verifying to a certainty the facts associated in news articles with a person's name, picture or portrait, particularly as related to non-defamatory matter. Even negligence would be a most elusive standard, especially when the content of the speech itself affords no warning of the prospective harm to another through falsity. . . . [¶] In this context, sanctions against either innocent or negligent misstatement would present a grave hazard of discouraging the press from exercising the constitutional guarantees." (385 U.S. at p. 389 [17 L.Ed.2d at pp. 467-468].)

Section 45a manifests a legislative determination that liability imposed for a publication which affords no warning of its defamatory nature, and has not caused actual pecuniary injury, would place too great a burden on the editorial process and would hamper the free dissemination of the news. The fact that plaintiff has deleted injury to reputation from his prayer and is seeking to recover only for injury to his sensibilities, does not alter the legislative judgment that such injuries alone are inadequate to outweigh the burden on a free press. The policy concerns identified in *McCleod* and *Werner* are not dependent on the type of general damages alleged.

The court below agreed with plaintiff's argument that adequate protection was afforded innocent publishers by the constitutional requirement of malicious publication. This argument challenges the merits of the special damages requirement itself, suggesting that the rule is unnecessary in defamation as well as false light cases. Indeed, the same argument could be made with regard to virtually all restrictions and limitations imposed on defamation actions that are not constitutionally compelled.

In *Werner* v. *Southern Cal. etc. Newspapers, supra,* 35 Cal.2d 126, this court addressed an identical argument regarding section 48a: "Although [the statute] extends its protection to those who may deliberately and maliciously disseminate libels, the Legislature could reasonably conclude that it was necessary to go so far effectively to protect those who in good faith and without malice inadvertently publish defamatory statements. . . . 'It may be urged, of course, that a false statement, known to be untrue, and dictated by malice, should always be the subject of a civil remedy. But this bald method of stating the question assumes both the untruth and the malice. If by any process of demonstration, free from the defects of human judgment, the untruth and malice could be set above and beyond all question of doubt, there might be ground for contending that the law should give damages to an injured person. But this is not the state of things under which this question of law has to be determined. Whether statements were in fact untrue, and

whether they were dictated by malice, are, and always will be, open questions, upon which opinions may differ, and which can only be resolved by the exercise of human judgment. And the real question is whether it is proper on grounds of public policy to remit such questions to the judgment of a jury. The reasons against doing so are simple and obvious. A participant in judicial proceedings may be utterly free from malice, and yet in the eyes of a jury be open to that imputation; or he may be cleared by the jury of the imputation, and may yet have to encounter the expense and distress of a harassing litigation. With such possibilities hanging over his head, he cannot be expected to speak with that free and open mind which the administration of justice demands.'" (35 Cal.2d at pp. 134-136, quoting from Veeder, *Absolute Immunity in Defamation* (1909) 9 Colum.L.Rev. 463, 469-470.)

This view is consistent with the position taken by Justices Black, Douglas and Goldberg in the *New York Times* decision. The concurring justices did not agree with the majority that an actual malice standard was sufficient to protect First Amendment values and did not concur in the adoption of that standard. A substantial majority of states have also found it desirable to extend additional protections to publishers through a special damages requirement. The fact that our Legislature has elected to do the same may not be second-guessed by this court.

We find the public policy embodied in section 45a equally applicable to an action for false light invasion of privacy based upon a defamatory publication. Since virtually every published defamation would support an action for false light invasion of privacy, exempting such actions from the requirement of proving special damages would render the statute a nullity. Permitting a plaintiff to circumvent the statutory requirement by labeling the action as one for false light invasion of privacy would defeat the legislative purpose of providing a zone of protection for the operation of a free press. The *Werner, Kapellas* and *Briscoe* courts would not allow such an evasion of legislative purpose, nor shall we. We hold that whenever a claim for false light invasion of privacy is based on language that is defamatory within the meaning of section 45a, pleading and proof of special damages are required.[13]

---

[13]Our holding would not apply to false light publicity that would be actionable as a public disclosure of private facts had the representations made in the publication been true. The public disclosure branch of the privacy tort involves the publication by defendant of non-newsworthy intimate details of plaintiff's private life. In the public disclosure of private facts context, the policies of section 45a are inapposite, since the injurious nature of the report should have been apparent on its face and the question of innocent mistake does not arise. Those false light cases based on publications which, if true, would be actionable as public disclosure of private facts, are conceptually indistinguishable from the latter category, and should not be subject to the special damages requirement of section 45a.

Although we recognize that a free press does not always mean a responsible press, the architects of the First Amendment anticipated that it would be necessary to tolerate some abuse in order to maintain the vitality of the guarantee. James Madison said: "Some degree of abuse is inseparable from the proper use of every thing, and in no instance is this more true than in that of the press. [¶] It has accordingly been decided . . . that it is better to leave a few of its noxious branches to their luxuriant growth, than by pruning them away, to injure the vigor of those yielding the proper fruits." (4 Elliott's Debates on the Federal Constitution (1876 ed.) p. 571.)

The judgment of the Court of Appeal is reversed.

Bird, C. J., Mosk, J., Reynoso, J., Grodin, J., Lucas, J., and Panelli, J., concurred.

**BIRD, C. J.**—I concur. I write separately because I think it is imperative at this time in our history that we give serious thought to the minority view expressed by Justices Goldberg and Douglas in *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710].

In my opinion, "sunlight is the most powerful of all disinfectants . . . ." (See Freund, The Supreme Court of the United States (1961) p. 61.) That "sunlight" in a democracy is provided in large part by the press.

For all its momentary power, the press as an institution is quite fragile. Although those who from time to time have suffered its slings and arrows may dispute that fact, it is a reality. To be truly free, the press must feel free—free to be wise and free to be foolish; free to be constructive and free to be destructive; free to be impartial and free to be unfair. That can only be accomplished if it knows that it has an "absolute, unconditional privilege to criticize official conduct despite the harm which may flow from excesses and abuses." (*New York Times Co.* v. *Sullivan, supra,* 376 U.S. at p. 298 [11 L.Ed.2d at p. 719] (conc. opn. of Goldberg, J.).) The press will never feel free if it is chilled by codification.

"The prized American right 'to speak one's mind,' cf. *Bridges* v. *California* [1941] 314 U.S. 252, 270, about public officials and affairs needs 'breathing space to survive,' (*N.A.A.C.P.* v. *Button* [1963] 371 U.S. 415, 433.) The right should not depend upon a probing by the jury of the motivation of the citizen or press. The theory of our Constitution is that every citizen may speak his mind and every newspaper express its view on matters of public concern and may not be barred from speaking or publishing because those in control of government think that what is said or written is unwise, unfair, false, or malicious. In a democratic society, one who

assumes to act for the citizens in an executive, legislative, or judicial capacity must expect that his official acts will be commented upon and criticized. Such criticism cannot, in my opinion, be muzzled or deterred by the courts at the instance of public officials under the label of libel." (*New York Times Co.* v. *Sullivan, supra,* 376 U.S. at pp. 298-299 [11 L.Ed.2d at p. 719] (conc. opn. of Goldberg, J.).)