Manuel Edward (Eddie) BUENO,
Plaintiff–Appellee and
Cross–Appellant,

v.

DENVER PUBLISHING COMPANY, a Colorado corporation, d/b/a Rocky Mountain News, Defendant–Appellant and Cross–Appellee.

No. 97CA1569.

Colorado Court of Appeals,
DIV. I.

March 2, 2000.

Rehearing Denied May 3, 2001.

Certiorari Granted Oct. 1, 2001.

Roger T. Castle, P.C., Roger T. Castle, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant

Baker & Hostetler, LLP, Marc D. Flink, Todd L. Lundy, Denver, Colorado, for Defendant–Appellant and Cross–Appellee

Opinion by Judge METZGER.

Defendant, the Denver Publishing Company, a Colorado corporation, d/b/a Rocky Mountain News, appeals the judgment entered on the jury verdict in favor of plaintiff, Manuel Edward ("Eddie") Bueno. We affirm.

On Saturday, August 27, and Sunday, August 28, 1994, defendant published a four-page, 13–column article under the headline "Denver's Biggest Crime Family." This article was the culmination of six-months' research, drafting, and editing by employees of defendant.

The article described the criminal activities of several of the 18 Bueno siblings, and it included a "family tree" drawing with photographs of all of them. Plaintiff's photograph appeared just below the headline "Denver's Biggest Crime Family," and its caption stated: "Eddie, 55, the oldest of the Bueno children." In the Saturday edition, a photograph of Freddie Bueno, the youngest brother, bore the caption "Freddie, 28, only Bueno brother who stayed out of trouble. Living in the Midwest." This caption was deleted from the Sunday edition.

The article contained over 25 statements which referred in critical terms to the "Bueno brothers," the "Bueno boys," the "older brothers," the "older boys," or the "Bueno family" as being criminals. For example, it said:

> The younger Buenos got jobs, trying to break from the criminal patterns of their older brothers. . . . But the older Buenos began to lure the younger ones into a life of crime by the promise of easy money.

> . . . .

> Joey can't help but look at his older brothers who robbed. They're out of prison now.

> . . . .

> Despite her attempts to be both mother and father to her 18 children, Della Bueno was unable to keep her sons out of crime.

> . . . .

> The younger brothers recall waking up many nights at 2 or 3 a.m. when their older brothers tumbled home drunk.

> . . . .

> [Madeline Bueno Stern] blames her older brothers for corrupting her younger ones.

> . . . .

> The Bueno girls got into minor scrapes with the law. . . . But their crimes paled next to their brothers'.

. . . .

The older Bueno brothers are in their 40s and 50s now. They're out of prison, but most of their younger brothers will be in for a long, long time.

After plaintiff left home at the age of 13, he supported himself by working odd jobs. He later married, joined the United States Army and served for six years before receiving an Honorable Discharge, and worked thereafter in the Denver area. He and his wife, a registered nurse, reared three children. He was never arrested for a crime, nor was he ever charged with a crime. After he left home, he had virtually no contact with his family and had no involvement whatsoever in his siblings' criminal activities. Defendant knew these facts at the time the article was being prepared and published.

Plaintiff sued defendant, asserting four claims for relief: negligence, defamation, invasion of privacy for giving publicity to private facts, and invasion of privacy for placing him in a false light. His wife asserted a claim for loss of consortium.

Before trial, the trial court entered summary judgment in favor of defendant on the negligence and invasion of privacy for giving publicity to private facts claims. It also dismissed, with plaintiff's agreement, his wife's loss of consortium claim.

At the close of the evidence, the trial court granted defendant's motion for directed verdict on the defamation claim.

The jury returned a verdict in favor of plaintiff on the false light—invasion of privacy claim. It awarded him $47,973.90 for noneconomic losses, $5,280 for economic losses arising out of loss of earnings and medical treatment, and assessed $53,253.90 for exemplary damages.

Defendant appeals; plaintiff conditionally cross-appeals.

## I.

■ Defendant first argues the trial court erred in submitting the claim for false light—invasion of privacy to the jury. It contends Colorado should not recognize that claim. We disagree.

In *Rugg v. McCarty*, 173 Colo. 170, 476 P.2d 753 (1970), the supreme court first recognized in Colorado "a right of privacy, an invasion of which may be compensated by damages." However, the court specifically declined to categorize comprehensively the character of all invasions which may constitute a violation of the right of privacy.

Later, in *Robert C. Ozer, P.C. v. Borquez*, 940 P.2d 371 (Colo.1997), the court recognized the tort claim for invasion of privacy in the nature of unreasonable publicity given to one's private life. The court also noted that a majority of jurisdictions recognized that the right of privacy may be invaded in four different ways: 1) unreasonable intrusion upon the seclusion of another; 2) appropriation of another's name or likeness; 3) unreasonable publicity given to another's private life; and 4) publicity that unreasonably places another in a false light.

More recently, a division of this court recognized a claim of invasion of privacy by intrusion upon one's seclusion. *See Doe v. High–Tech Institute, Inc.*, 972 P.2d 1060 (Colo.App.1998). Additionally, in *Dittmar v. Joe Dickerson & Associates, LLC*, 9 P.2d 1145 (Colo.App.1999), a division of this court recognized the claim of invasion of privacy by appropriation of another's name or likeness.

In all of these cases, the courts relied heavily on the analysis contained in the Restatement (Second) of Torts (1977) for guidance.

To establish a claim for false light invasion of privacy a plaintiff must establish by clear and convincing evidence that:

1) the defendant publicized false information concerning the plaintiff that placed the plaintiff before the public in a false light or false position, in other words, otherwise than as he is;

2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person;

3) the defendant had knowledge of, or acted in reckless disregard as to, the falsity of the matter it publicized about the plaintiff and the false light in which the plaintiff would be placed. Additionally, the jury

must find by a preponderance of the evidence that the publicity caused the plaintiff to incur damages, injuries, and losses.

See Restatement (Second) of Torts § 652E (1977).

A sizeable majority of other jurisdictions have recognized the existence and viability of this claim, either by statute or by decision. See Doe v. Roe, 638 So.2d 826 (Ala.1994); Godbehere v. Phoenix Newspapers, Inc., 162 Ariz. 335, 783 P.2d 781 (1989); Dodrill v. Arkansas Democrat Co., 265 Ark. 628, 590 S.W.2d 840 (1979), cert. denied, sub nom., Little Rock Newspapers, Inc. v. Dodrill, 444 U.S. 1076, 100 S.Ct. 1024, 62 L.Ed.2d 759 (1980); Fellows v. National Enquirer, Inc., 42 Cal.3d 234, 228 Cal.Rptr. 215, 721 P.2d 97 (1986); Goodrich v. Waterbury Republican–American, Inc., 188 Conn. 107, 448 A.2d 1317 (1982); Barbieri v. News–Journal Co., 56 Del. 67, 189 A.2d 773 (1963); Agency for Health Care Administration v. Associated Industries of Florida, Inc., 678 So.2d 1239 (Fla.1996), cert. denied, 520 U.S. 1115, 117 S.Ct. 1245, 137 L.Ed.2d 327 (1997); Cabaniss v. Hipsley, 114 Ga.App. 367, 151 S.E.2d 496 (1966); Lovgren v. Citizens First National Bank, 126 Ill.2d 411, 128 Ill.Dec. 542, 534 N.E.2d 987 (1989); Winegard v. Larsen, 260 N.W.2d 816 (Iowa 1977); Dotson v. McLaughlin, 216 Kan. 201, 531 P.2d 1 (1975); McCall v. Courier–Journal & Louisville Times Co., 623 S.W.2d 882 (Ky.1981), cert. denied, 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 849 (1982); Harnish v. Herald–Mail Co., 264 Md. 326, 286 A.2d 146 (1972); Board of Dentistry v. Kandarian, 268 Mont. 408, 886 P.2d 954 (1994); Turner v. Welliver, 226 Neb. 275, 411 N.W.2d 298 (1987)(citing false light—invasion of privacy as codified in Neb. Rev.Stat. § 20–204 (1983)); Romaine v. Kallinger, 109 N.J. 282, 537 A.2d 284 (1988); McCormack v. Oklahoma Publishing Co., 613 P.2d 737 (Okla.1980); Russell v. Thomson Newspapers, Inc., 842 P.2d 896 (Utah 1992); Lemnah v. American Breeders Service, Inc., 144 Vt. 568, 482 A.2d 700 (1984); Eastwood v. Cascade Broadcasting Co., 106 Wash.2d 466, 722 P.2d 1295 (1986); Crump v. Beckley Newspapers, Inc., 173 W.Va. 699, 320 S.E.2d 70 (1983); Perere v. Louisiana Television Broadcasting Corp., 721 So.2d 1075 (La.App.1998); Deitz v. Wometco West Michigan TV, 160 Mich.App. 367, 407 N.W.2d 649 (1987); Moore v. Sun Publishing Corp., 118 N.M. 375, 881 P.2d 735 (1994), cert. denied, 118 N.M. 430, 882 P.2d 21 (1994); Dean v. Guard Publishing Co., 73 Or.App. 656, 699 P.2d 1158 (1985); Larsen v. Philadelphia Newspapers, Inc., 375 Pa.Super. 66, 543 A.2d 1181 (1988), cert. denied, 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 935 (1989).

Other jurisdictions have not adopted the tort. See Falwell v. Penthouse International, Ltd., 521 F.Supp. 1204 (W.D.Va.1981); Luedtke v. Nabors Alaska Drilling, Inc., 768 P.2d 1123 (Alaska 1989); Peterson v. Idaho First National Bank, 83 Idaho 578, 367 P.2d 284 (1961); Near East Side Community Organization v. Hair, 555 N.E.2d 1324 (Ind. App.1990); Elm Medical Laboratory, Inc. v. RKO General, Inc., 403 Mass. 779, 532 N.E.2d 675 (1989); Lake v. Wal–Mart Stores, Inc., 582 N.W.2d 231 (Minn.1998); Prescott v. Bay St. Louis Newspapers, Inc., 497 So.2d 77 (Miss.1986); Sullivan v. Pulitzer Broadcasting Co., 709 S.W.2d 475 (Mo.1986); Arrington v. New York Times Co., 55 N.Y.2d 433, 434 N.E.2d 1319, 449 N.Y.S.2d 941 (1982), cert. denied, 459 U.S. 1146, 103 S.Ct. 787, 74 L.Ed.2d 994 (1983); Renwick v. News & Observer Publishing, Co., 310 N.C. 312, 312 S.E.2d 405 (1984), cert. denied, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 121 (1984); M.J. DiCorpo, Inc. v. Sweeney, 69 Ohio St.3d 497, 634 N.E.2d 203 (1994); Parker v. Evening Post Publishing Co., 317 S.C. 236, 452 S.E.2d 640 (1994), cert. denied, 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996); Cain v. Hearst Corp., 878 S.W.2d 577 (Tex.1994). See generally Annot., "False Light Invasion of Privacy—Cognizability and Elements," 57 A.L.R.4th 22 (1987) and Annot., "False Light Invasion of Privacy—Defenses and Remedies," 57 A.L.R.4th 244 (1987).

Additionally, the United States Supreme Court has approved false light—invasion of privacy claims in Cantrell v. Forest City Publishing Co., 419 U.S. 245, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974), and Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967).

We disagree with defendant's argument that false light—invasion of privacy claims should be rejected because they are "duplicative and superfluous of defamation claims."

A statement is defamatory if it lowers the plaintiff's reputation in the subjective eyes of a "respectable minority" of those in the community. *See Burns v. McGraw-Hill Broadcasting, Co.*, 659 P.2d 1351, 1357 (Colo. 1983). In contrast, in a false light—invasion of privacy claim, the publication must be "highly offensive" as viewed from the perspective of a reasonable person. *See* Restatement (Second) of Torts § 652E (1977). Therefore, since the latter claim contains different elements and a different standard of proof, it is not duplicative of defamation.

For the same reason, we also disagree with defendant's assertion that false light—invasion of privacy claims "dilute and weaken the established principles governing defamation claims." These torts protect entirely different interests. As the United States Supreme Court explained in *Time, Inc. v. Hill, supra,* 385 U.S. at 384–85 n. 9, 87 S.Ct. at 540–41 n. 9, 17 L.Ed.2d at 465 n. 9: "Although not usually thought of in terms of 'right of privacy,' all libel cases concern public exposure by false matter, but the primary harm being compensated is damage to reputation. In the 'right of privacy' cases the primary damage is the mental distress from having been exposed to public view. . . ." Because the principles governing the two torts differ, one does not weaken the other.

Additionally, we reject defendant's contention that, because false light—invasion of privacy claims have different and lower standards of liability than defamation, they "constitute an impermissible restriction of free speech interest under the First Amendment."

In the first place, the standards for imposing liability in false light—invasion of privacy claims are different from and more stringent than those for defamation. *See generally Time, Inc. v. Hill, supra;* Bryan R. Lasswell, *In Defense of False Light: Why False Light Must Remain a Viable Cause of Action,* 34 S. Tex. L.Rev. 149 (1993). Moreover, the decision in *Time, Inc. v. Hill, su-*
*pra,* made the constitutional protections for defamation claims applicable to false light—invasion of privacy claims. Consequently, because well-established law defeats defendant's argument, we reject it.

Accordingly, we hold that the tort claim of false light—invasion of privacy, as defined and explained in Restatement (Second) of Torts § 652E (1977), is a viable claim in Colorado.

Consequently, the trial court was correct in instructing the jury on its elements.

## II.

Defendant next contends that special damages must be deemed to be an element of false light—invasion of privacy claims. And, defendant argues, because plaintiff failed to show the existence of special damages, the trial court erred in submitting the false light—invasion of privacy claim to the jury. Again, we disagree.

Special damages must be temporal, material, pecuniary, or economic in character. *See* Restatement (Second) of Torts § 575 cmt. b (1977). In *Tucker v. Parks,* 7 Colo. 62, 1 P. 427 (1884), the supreme court adopted the general rule that special damages, which are not the usual and natural consequence of the wrongful act complained of, must be specifically pled and proved. *See also* C.R.C.P. 9(g).

Here, plaintiff pled and established as special damages that he had lost income and incurred expenses for medical and psychological treatment resulting from his response to the reactions of third persons to defendant's newspaper article. This was sufficient. *See Hinsey v. Jones,* 159 Colo. 326, 411 P.2d 242 (1966). In light of this state of the evidence, we need not consider whether special damages must be proved as an element of a false light—invasion of privacy claim.

## III.

Defendant next argues the evidence is insufficient to establish it acted with actual malice. We do not agree.

■ Malice is described as a defendant's knowledge that a statement was false or a reckless disregard as to the truth or falsity of the statement. *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The law does not require that a defendant have a deliberate intent to publish a false statement. *See Fink v. Combined Communications Corp.,* 679 P.2d 1108 (Colo. App.1984). Instead, a plaintiff is required only to establish that false statements were published and that the defendant had knowledge that the statements were false or that it acted with reckless disregard as to the truth or falsity of the statements. *New York Times Co. v. Sullivan, supra.*

■ Malice can be proved by circumstantial evidence. *See e.g. Burns v. McGraw–Hill Broadcasting Co., supra.* If there were apparent reasons for the reporter to doubt the veracity of the informant or the accuracy of the reports, recklessness may be found. *See St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Additionally, the failure to investigate other sources in the absence of time pressure to finish the story can support a finding of reckless disregard. *Burns v. McGraw–Hill Broadcasting Co., supra.*

■ Here, the jury was correctly instructed regarding the issue of malice and that plaintiff was required to prove by clear and convincing evidence that defendant had acted with malice. The jury, as fact finder, *St. Amant v. Thompson, supra,* determined that plaintiff had met his burden of proof. Our review of the record convinces us that that determination may not be disturbed.

The newspaper story here took over six months to prepare. It contained several statements concerning the criminal activities of the "older Bueno brothers" (plaintiff was the eldest brother). Yet, at trial, each of defendant's employees who participated in the preparation of this article testified that the information they had about plaintiff could not justify a portrayal of him as having been involved in any criminal activities.

Additionally, the "chief source" for the story was one of plaintiff's sisters, Madeline Bueno Stern, who was born a year after plaintiff left home. This sister told the reporter who authored the story that she "hated" plaintiff, that she wished she had killed plaintiff, and that she wanted to use this story to "get back" at her older brothers. The reporter knew this sister had participated in many crimes with several brothers and had received immunity from prosecution in exchange for testifying against them.

We also note that defendant's own actions, in removing a caption which stated "only Bueno brother who stayed out of trouble" under a photograph of defendant's brother Freddie, could have been viewed by the jury as a recognition that its initial use of that caption in its first printing was substantially false.

The jury was correctly instructed on the pertinent law and considered evidence which was developed in this week-long trial. Since the record contains sufficient evidence to support the jury's determination, we may not disturb it.

## IV.

■ Defendant next contends that a specific statement in the article, that plaintiff had not engaged in criminal activity, specifically refutes the negative implication raised by the article. Thus, defendant argues, the article is constitutionally protected. We do not agree.

■ The interpretation of the article and the determination whether it invaded plaintiff's privacy by casting him in a false light are questions of fact for the jury. *See St. Amant v. Thompson, supra.* Here, the jury heard several days of testimony and considered voluminous exhibits concerning the issues in the case. The jury determined that plaintiff had met his burden of proof, and the evidence supports that conclusion.

We do not agree with defendant's argument that *NBC Subsidiary (KCNC–TV), Inc. v. The Living Will Center,* 879 P.2d 6 (Colo. 1994), *cert. denied,* 514 U.S. 1015, 115 S.Ct. 1355, 131 L.Ed.2d 214 (1995), dictates a contrary result. That case involved defamation; here, in contrast, false—light invasion of privacy was the issue. Second, the issue in that case was whether opinions contained in a

television broadcast were defamatory. The newspaper article here was not phrased in terms of opinion. Finally, both the United States Supreme Court and our supreme court have clearly held that even an implication of criminal conduct cannot be constitutionally protected. *See Milkovich v. Lorain Journal Co.,* 497 .U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); *Keohane v. Stewart,* 882 P.2d 1293 (Colo.1994). The theme of the article here centered around criminal activity. Consequently, *NBC Subsidiary (KCNC–TV), Inc. v. The Living Will Center, supra,* is inapposite.

### V.

■ Defendant next contends the evidence is insufficient to support the punitive damages award. We do not agree.

■ A jury's determination of damages must be given considerable deference and should not be overturned unless the award is grossly and manifestly excessive. *Keohane v. Stewart, supra.*

Here, the jury was correctly instructed concerning the factors necessary for it to resolve the punitive damages issue. And, the jury's determination that defendant's conduct was willful and wanton and done with reckless disregard finds ample support in the record. Thus, its assessment of the evidence cannot be disturbed.

■ We also reject defendant's argument that, because the article contained no explicit defamatory statements, exemplary damages could not be appropriate in this false light—invasion of privacy case. In *Cantrell v. Forest City Publishing Co., supra,* the Supreme Court recognized the propriety of exemplary damages in a false light—invasion of privacy suit in which false implications and impressions were involved. The basis of plaintiff's case here concerned the allegedly false implications and impressions which resulted from defendant's newspaper article.

Consequently, this portion of the verdict may not be disturbed.

### VI.

■ Defendant next argues the trial court erred in excluding what defendant asserts was plaintiff's juvenile arrest card for petty theft. We do not agree.

Defendant argues the card should have been admitted because it showed that plaintiff had engaged in criminal activity. Defendant wished to use that arrest card in its argument to the jury that its article did not cast plaintiff in a false light.

The trial court refused to admit the arrest card for several reasons. In the first place, the court determined, the juvenile arrest card was irrelevant: "Evidence that Eddie Bueno was arrested as a juvenile in 1956 is absolutely no evidence of any kind that he is a criminal."

■ A trial court's determination of relevancy should be accorded great deference. *People v. Clary,* 950 P.2d 654 (Colo.App. 1997). The minor nature of the alleged offense, the fact that it was, at most, a delinquent act (and therefore, not a crime by definition), and that it had occurred 40 years before trial, render it of no consequence to the issues in the case. CRE 401. Moreover, since plaintiff had no convictions, no reasonable person could have concluded that he was a "criminal." Thus, the trial court did not abuse its discretion in refusing to admit the card.

■ We will not address defendant's argument concerning evidence of plaintiff's alleged arrest for a traffic offense 40 years before trial and his alleged participation in an altercation more than 40 years before trial. Defendant did not seek to admit this evidence at trial; thus, the issue was not preserved for our review. *See Boatright v. Derr,* 919 P.2d 221 (Colo.1996).

For the same reason, we will not consider defendant's argument that the jury instructions were incomplete. Defendant did not raise this argument in the trial court, and we will not consider it here. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718 (Colo.1992).

## VII.

Plaintiff has cross-appealed the trial court's judgment dismissing his defamation claim. However, he asked that we consider the issues raised in that cross-appeal only in the event we reversed the judgment on the jury's verdict. Since we are affirming that judgment, we need not consider the issues raised on cross-appeal.

The judgment is affirmed.

Judge DAVIDSON and Judge CRISWELL,* concur.